222 N.J. Super. 306 (1988)
536 A.2d 1280
JEREMY ZWEIG, AN INFANT BY HIS GUARDIAN AD LITEM, JOSEPH ZWEIG, AND JOSEPH ZWEIG, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
E.R. SQUIBB & SONS, INC., A CORPORATION OF THE STATE OF DELAWARE, DEFENDANT-RESPONDENT, AND FREDERICK A. SMALL, M.D., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1987.
Decided January 7, 1988.
*308 Before Judges FURMAN, BRODY and SCALERA.
Daniel Crystal argued the cause for appellants (Cohn & Lifland, attorneys; Barry A. Knopf and James M. Docherty, of counsel; Daniel Crystal, on the brief).
Charles J. Walsh argued the cause for respondent (Sills, Beck, Cummis, Zuckerman, Radin, Tischman & Epstein, attorneys; Charles J. Walsh and Barry M. Epstein, of counsel and on the brief; Stuart M. Feinblatt and Kathleen Burns, on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
In June 1973, during the first trimester of her pregnancy with the infant plaintiff (plaintiff), plaintiff's mother received an injection of Delalutin, a drug manufactured by defendant to reduce the chance of a threatened miscarriage. The drug had been approved in 1956 by the United States Food and Drug Administration (FDA) to be used for that and other purposes. Delalutin is a synthetic progestin, designed to act like progesterone, *309 a female hormone that contributes to the expandability of the uterus during pregnancy. Plaintiff was born with an agenesis of the ulna of his left arm, a disabling underdevelopment of the left arm and hand. Plaintiff attributes the birth defect to the Delalutin injection and brought this action in which he alleges negligence and products liability.
After a lengthy trial, the jury answered "no" to the following special interrogatory:
Has it been proved by a preponderance of the credible evidence that Delalutin is defective (that is, that Delalutin causes limb reduction defects of the type sustained by Jeremy Zweig)?
Judgment was accordingly entered for defendant. Plaintiff argues in this appeal that the judge erred by not precluding defendant from arguing the issue that the jury determined because a Utah jury in another case had determined in 1981 that Delalutin caused the kind of defect complained of in this case. Plaintiff also argues that the judge erroneously excluded important evidence and erroneously dismissed his negligence claim.
We deal first with the excluded evidence. As the result of "reports" suggesting an association between intrauterine exposure to female sex hormones and limb reduction defects, the FDA in 1977 directed that progestational agents, such as Delalutin, carry an insert warning to physicians and women that the use of such drugs during the first four months of pregnancy "is not recommended."
In compliance with the FDA directive, defendant's Delalutin insert to physicians states in part, "There is no adequate evidence that [use of progestational agents to treat threatened miscarriage] is effective and there is evidence of potential harm to the fetus when such drugs are given during the first four months of pregnancy."
The Delalutin insert to women states:

*310 There is an increased risk of birth defects in children whose mothers take this drug during the first four months of pregnancy.
Delalutin is similar to the progesterone hormones naturally produced by the body. Progesterone and progesterone-like drugs are used to treat menstrual disorders, to test if the body is producing certain hormones, and to treat some forms of cancer in women.
They have been used as a test for pregnancy but such use is no longer considered safe because of possible damage to a developing baby. Also, more rapid methods for testing for pregnancy are now available.
These drugs have also been used to prevent miscarriage in the first few months of pregnancy. No adequate evidence is available to show that they are effective for this purpose and there is evidence of an increased risk of birth defects, such as heart or limb defects, if these drugs are taken during the first four months of pregnancy. Furthermore, most cases of early miscarriage are due to causes which could not be helped by these drugs.
The exact risk of taking this drug early in pregnancy and having a baby with a birth defect is not known. However, one study found that babies born to women who had taken sex hormones (such as progesterone-like drugs) during the first three months of pregnancy were four to five times more likely to have abnormalities of the arms or legs than if their mothers had not taken such drugs. Some of these women had taken these drugs for only a few days. The chance that an infant whose mother had taken this drug will have this type of defect is about 1 in 1,000.
If you take Delalutin (Hydroxyprogesterone Coproate Injection USP) and later find you were pregnant when you took it, be sure to discuss this with your doctor as soon as possible.
The trial judge properly ruled that these inserts are hearsay. Plaintiff argues that the inserts are not hearsay because they were not being offered to prove the truth of their contents but rather to bolster the credibility of his experts who gave the opinion that Delalutin can cause limb reduction birth defects. The inserts would not have that effect, however, unless the jury first accepted their contents as true.
We also disagree with plaintiff's argument that the inserts are like admissible safety codes. The Supreme Court in McComish v. DeSoi, 42 N.J. 274, 282 (1964), explained the basis for admitting a safety code:
[A safety] code is not introduced as substantive law, as proof of regulations or absolute standards having the force of law or of scientific truth. It is offered *311 in connection with expert testimony which identifies it as illustrative evidence of safety practices or rules generally prevailing in the industry, and as such it provides support for the opinion of the expert concerning the proper standard of care.
Here the jury did not reach the issue of whether a particular standard of care is generally accepted in the industry. It decided a threshold scientific truth: Delalutin does not cause limb reductions. The inserts are inadmissible hearsay evidence that were offered to disprove that disputed fact.
Plaintiff contends that the judge erred in barring evidence that Delalutin is an ineffective treatment for threatened miscarriage. He argues that such evidence proves that defendant had deceived those who used Delalutin for that purpose. Deception was not an issue in this case. Even if defendant had deceived plaintiff's mother and her doctor to believe that Delalutin was an effective treatment, the jury found that use of Delalutin does not cause the harm for which plaintiff sought damages.
The jury's verdict also rendered inconsequential the judge's dismissal of the negligence claim. Even if defendant negligently injected plaintiff's mother with Delalutin, the jury found that the injection was harmless.
Finally, plaintiff argues that defendant is estopped from asserting that Delalutin is harmless because in 1981 a Utah jury found that Delalutin caused a plaintiff limb reduction and other birth defects. The Utah judgment was affirmed on appeal. Barson v. E.R. Squibb & Sons, Inc., 682 P.2d 832 (Utah 1984). The doctrine of collateral estoppel may be asserted by a person who was not a party to the prior action. Where there is absence of mutuality, however, the doctrine is applied with a lighter hand. As the Court said in State v. Gonzalez, 75 N.J. 181, 190 (1977):
Thus, the traditional mutuality rule has been replaced with a flexible approach closely tied to the practicalities of certain types of litigation and to the *312 details of the prior adjudication, rather than an indiscriminate application of collateral estoppel whenever a party may be said to have had a "day in court."
That more flexible approach bars application of the doctrine here.
The record discloses that studies of Delalutin, conducted after the Utah verdict, have absolved the drug of the harmful effects alleged here. There is now biological evidence that the drug cannot cause limb reduction. The FDA, which in 1977 had warned against using Delalutin during the first trimester of pregnancy, is now considering whether to retract that warning in light of a recommendation from its Fertility and Maternal Health Drugs Advisory Committee that Delalutin does not appear to be harmful. Later scientific discoveries that cast doubt on prior findings of scientific facts deprive those earlier findings of collateral estoppel effect. See Ezagui v. Dow Chem. Corp., 598 F.2d 727, 731-732 (2 Cir.1979).
It also appears that the Utah trial court permitted that jury to consider the FDA-compelled inserts that were properly excluded here. Those inserts were unfairly prejudicial to defendant. When the law of the forum in which an action is pending permits a fact issue to be tried more fairly than the law of the forum where the issue previously had been tried, collateral estoppel is not a bar to retrial of the issue. See 2 Restatement, Judgments 2d, § 29(2) at 291.
The other issues raised by plaintiff are clearly without merit. R. 2:11-3(e)(1)(E).
Affirmed.