605 A.2d 709

N.M., PLAINTIFF–RESPONDENT, v. J.G.,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 22, 1992—Decided March 30, 1992.

Before Judges ANTELL, LONG and THOMAS.

*John P. Paone, Jr.*, argued the cause for appellant (*Robert E. Berg*, on the brief).

*James M. Newman*, guardian *ad litem*, argued the cause for respondent K.R.

The opinion of the court was delivered by

LONG, J.A.D.

Defendant, J.G. appeals from a Family Part order directing him to submit to a Human Leucocyte Antigen (HLA) test to determine whether he is the father of plaintiff N.M.'s sixteen year old son, K.R., who was born during her marriage to R.R. We have been called upon here to determine the procedures necessary to order blood testing under the New Jersey Parentage Act (Parentage Act), *N.J.S.A.* 9:17–38 to –59, in a case in which there is a presumption as to parentage and the party from whom blood testing is sought is not the presumptive parent. We will also address the legal concepts applicable to a belated paternity action against a third party by the parent of a child born of a valid ceremonial marriage and the right of the child to pursue that action independently.

## I

The case arose as follows: N.M. and R.R. were lawfully married on February 1, 1972. During the course of their union, plaintiff gave birth to two children, S.R. and R.R., Jr. Although the parties separated in August 1974, K.R. was born on November 17, 1974. His birth certificate lists R.R. as his father.

Plaintiff filed and served a complaint for divorce on R.R. in September 1976. R.R. failed to answer, and a default judgment was ultimately entered in February 1977. In July 1977, a judgment of divorce was entered reflecting that three children (including K.R.) had been born of the marriage. Plaintiff was awarded custody of R.R., Jr., and K.R. R.R. was awarded custody of S.R., presumably pursuant to the agreement of the parties. R.R. was ordered to pay plaintiff the sum of $10.00 per week for alimony and an additional $10.00 per week per child for the support and maintenance of R.R., Jr., and K.R. By June 1979, R.R.'s payments had fallen into arrears. The Probation Department, on plaintiff's behalf, sought enforcement of the judgment.

After the divorce from R.R., plaintiff married E.L. and had two additional children. During their marriage, which ended in divorce in 1984, plaintiff told K.R. that E.L. was his father. By 1987 K.R., then age thirteen, began to have doubts about who his father really was. At that time, plaintiff told him that defendant was his father. In so doing, she explained that she had had an extra-marital affair with defendant resulting in pregnancy. Sometime thereafter, plaintiff married her third husband T.M.

In May 1990, plaintiff filed a complaint for support against defendant, alleging him to be K.R.'s father. The complaint was originally assigned to a hearing officer whose report, referring the case to the trial judge, reflected defendant's denial of paternity and K.R.'s birth during plaintiff's marriage to R.R.

On November 2, 1990, the trial judge heard argument of counsel. R.R., who had consented to submitting to a blood test, was also present. At the hearing, defendant's denial of paternity was reiterated. Defendant also asserted that at the time of K.R.'s conception, plaintiff was having sexual liaisons with two other individuals, R.C. (deceased) and M.H. Plaintiff acknowledged that she had previously sworn before another judge that K.R. was R.R.'s son. Defendant also argued that plaintiff had the initial burden of proving that K.R. was not R.R.'s child and that R.R. should be tested before any further action took place. The trial judge ordered plaintiff, defendant, K.R., and R.R. to submit to an HLA test to establish paternity of K.R. Defendant was granted leave to join R.R. as a party.

On November 14, 1990, defendant filed an Order to Show Cause contesting paternity and requesting a stay of the blood testing. In his supporting certification, he pointed out the prior judicial proceedings in which R.R. was named as K.R.'s father; that R.R. was listed as the father on K.R.'s birth certificate; that defendant had never been contacted by plaintiff and was unaware of her claim as to K.R.'s parentage until he received the complaint, and argued that plaintiff should be estopped from claiming paternity sixteen years after the fact.

On November 15, 1990, the trial judge stayed his order pending the outcome of an argument which was eventually held on March 5, 1991. At the conclusion, the trial judge dismissed plaintiff's complaint on entire controversy grounds. In addition, *sua sponte,* he amended the complaint to include K.R. as a plaintiff and appointed James M. Newman as guardian *ad litem* for the child. The guardian *ad litem* was ordered to prepare a report regarding the paternity and blood testing.

On April 9, 1991, the guardian *ad litem* presented his report. The report was based upon interviews with plaintiff, K.R., and K.R.'s therapist. The guardian *ad litem* stated that until the age of thirteen, K.R. was not aware that E.L. was not his father. K.R. had been enrolled in school under E.L.'s last name

and had always been known by that name. According to the guardian *ad litem*, K.R. "expressed ... a true sincere desire to know ..." his true father. K.R.'s ongoing therapist, Judy Rothrock, an employee at Bayshore Youth and Family Services, confirmed "that K.R. is basically a good kid, but is having some real teenage problems, as well as identity crisis problems." The guardian *ad litem* reported that:

> K.R. has had some severe psychological problems associated with,—and including some real expressions of a desire to take his life or not being happy with his existence, et cetera, et cetera. Not attributable solely to this problem, but certainly a contributing factor.

> After reviewing that and becoming aware that K.R. had been aware of the allegations of J.G., of his father for quite a number of years, I came to the conclusion that it would be in his best interests for this issue to be resolved once and for all, to determine who in fact is his father and where his heritage stems from.

Based upon the guardian *ad litem*'s report, the judge found no reason to change his previous order. He stated that he had no "doubt ... that the child has the right to know who his father is." He stayed his order pending appeal to this court. On September 11, 1991, defendant moved for leave to appeal which was granted by us.

Defendant argues that the trial judge erred in ordering the blood test. In support of his argument, he relies on the entire controversy doctrine, judicial estoppel, laches, *res judicata*, and collateral estoppel. He also argues that the bar against plaintiff applies to K.R. because their interests are in privity and that the divorce judgment is a court approved agreement between plaintiff and R.R. which bars a paternity action against defendant. We disagree with all of these contentions and affirm.

## II

We begin with the trial judge's determination that plaintiff's action is barred by the entire controversy doctrine. This is correct. Clearly, the paternity action should have been joined with the divorce action. Failing such joinder, entire controver-

sy principles bar the later action. *R.*4:27–1; *B.P. v. G.P.,* 222 *N.J.Super.* 101, 536 *A.*2d 271 (App.Div.), *certif. denied,* 108 *N.J.* 579, 531 *A.*2d 1354 (1987).

Likewise, plaintiff's claims are precluded by principles of judicial estoppel which bar a party to a legal proceeding from arguing a position inconsistent with one previously asserted. *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 *F.*2d 414, 419 (3d Cir.), *cert. denied,* 488 *U.S.* 967, 109 *S.Ct.* 495, 102 *L.Ed.*2d 532 (1988); *Levin v. Robinson, Wayne & La Sala,* 246 *N.J.Super.* 167, 178–80, 586 *A.*2d 1348 (Law Div.1990). Plaintiff's assertion of R.R.'s paternity in the divorce action and her pursuit of R.R. for support of K.R. were diametrically opposite to the position she espoused in this action, thus warranting application of judicial estoppel principles. In short, the trial judge properly barred plaintiff from pursuing defendant in this action.

We turn next to the trial judge's rulings as to K.R. and more particularly to his conclusion that K.R. is not barred from proceeding in this matter because of the preclusion against his mother. In *B.P. v. G.P., supra,* where, as here, the plaintiff-mother was barred from pursuing a paternity action by the entire controversy doctrine, we specifically noted the propriety of joinder of the child as a party plaintiff under *R.* 5:14–1 because of the child's "consummate" interest in the outcome. By that ruling, we implicitly rejected privity between parent and child as a bar to the child's action. Here, we explicitly reaffirm that view. In order for the doctrine of privity to be invoked, the first litigation must provide substantial protection of the rights and interests of the party sought to be bound in the second. *Restatement (Second) of Judgments,* § 41 (1982); 46 *Am.Jur.2d Judgments,* § 538 (1969). Clearly, that is not the case here. Plaintiff's interest in the earlier case was two-fold: the legitimization of K.R. and the assurance of support. K.R. has an entirely distinct and additional interest to be vindicated in his suit—his desire to know, for psychological and health

reasons, who his father really is. This interest was surely not addressed in the first litigation by plaintiff who admits now that she allowed R.R. to be named as K.R.'s father although she knew this was not the truth.

We are equally satisfied that defendant's argument that judicial estoppel should bar K.R.'s claim is incorrect. The position being taken by K.R. is not inconsistent with any position *he* took previously. His position has been constant throughout his participation in these proceedings. Only his mother has changed legal positions. She is bound by her previously asserted position that R.R. is the father of K.R. On the contrary, K.R. is not judicially estopped from seeking a paternity determination here.

Likewise, K.R. is not barred by the doctrine of laches from maintaining this action. The New Jersey Parentage Act, *N.J.S.A.* 9:17–38 to –59, provides that "[n]o action shall be brought under this act more than five years after the child attains the age of majority." *N.J.S.A.* 9:17–45(b). The Legislature thus prescribed a twenty-three (23) year window in which a child may bring a suit to determine parentage. Obviously, the issues involved were deemed sufficiently important to warrant this latitude. Moreover, although the sixteen year delay on the part of plaintiff was surely unreasonable and surely disadvantaged defendant, thus warranting the application of the doctrine of laches to plaintiff's claim, *Lavin v. Hackensack Bd. of Educ.*, 90 *N.J.* 145, 151, 447 *A.*2d 516 (1982), K.R. did not delay unreasonably. He did not learn of the possibility that J.G. was his father until he was thirteen years old and the guardian *ad litem* did not delay at all in proceeding upon his appointment. Most important, by the time K.R. became aware of defendant's possible paternity, any detriment to defendant had already accrued due to plaintiff's delay. Thus laches is no bar to K.R.'s action.

Further, neither *res judicata* nor collateral estoppel apply here. *Res judicata* precludes a party or its privies from

relitigating claims that were or could have been raised in a prior action. *Allen v. McCurry*, 449 *U.S.* 90, 94, 101 *S.Ct.* 411, 414, 66 *L.Ed.*2d 308, 313 (1980). *See also Culver v. Insurance Co. of North America*, 115 *N.J.* 451, 460, 559 *A.*2d 400 (1989); *City of Hackensack v. Winner*, 162 *N.J.Super.* 1, 27–28, 392 *A.*2d 187 (App.Div.1978), *mod. on other grounds*, 82 *N.J.* 1, 410 *A.*2d 1146 (1980). The mechanics of *res judicata* require a final judgment by a court or tribunal of competent jurisdiction, identity of parties, issues, and causes of action. *See Culver v. Insurance Co. of North America, supra*, 115 *N.J.* at 460, 559 *A.*2d 400; *T.W. v. A.W.*, 224 *N.J.Super.* 675, 682, 541 *A.*2d 265 (App.Div.1988); *Eatough v. Bd. of Medical Examiners*, 191 *N.J.Super.* 166, 173, 465 *A.*2d 934 (App.Div.1983). K.R. was not a party to the divorce litigation thus obviating application of this doctrine.

█ Similarly, collateral estoppel, a branch of *res judicata*, bars a party from relitigating issues which were actually litigated and determined in a prior case involving a different claim or action. *See, e.g., Warren Tp. v. Suffness*, 225 *N.J.Super.* 399, 408, 542 *A.*2d 931 (App.Div.1988), *certif. denied*, 113 *N.J.* 640, 552 *A.*2d 166 (1988); *Zoneraich v. Overlook Hospital*, 212 *N.J.Super.* 83, 93, 514 *A.*2d 53 (App.Div.), *certif. denied*, 107 *N.J.* 32, 526 *A.*2d 126 (1986); *Delbridge v. Schaeffer*, 238 *N.J.Super.* 323, 331, 569 *A.*2d 872 (Law Div.1989); *Restatement (Second) of Judgments, supra*, § 27. The doctrine may be asserted by one who was not a party to the prior litigation. *Zweig v. E.R. Squibb & Sons, Inc.*, 222 *N.J.Super.* 306, 311, 536 *A.*2d 1280 (App.Div.), *certif. denied*, 111 *N.J.* 614, 546 *A.*2d 533 (1988). What is critical is that the issue was fully and fairly litigated in the prior proceeding. We have no confidence that that is the case here. R.R. did not answer N.M.'s complaint for divorce. The judgment was entered by default and there is no indication that the later support actions were contested. This record reveals no instance in which the issue of K.R.'s paternity was squarely addressed let alone resolved by judicial fiat. In short, there is no judicial link between the divorce and K.R.'s

claim in this action. Thus we affirm the trial judge's conclusion that K.R. may proceed with this action.

■    Where we part company from the trial judge is on an entirely different issue. We think that he put the proverbial cart before the horse in endeavoring to assess the viability of the allegations of paternity by the results of the HLA tests. The Parentage Act, which was modeled after the Uniform Parentage Act (promulgated by the National Conference of Commissioners on Uniform State Laws), has as one of its purposes "to provide a procedure to establish parentage in disputed cases." *Assembly Judiciary, Law, Public Safety and Defense Committee Statement*, Senate, No. 888–L.1983, c. 17, § 1. The Parentage Act also provides that a man is presumed to be the natural father of a child if:

> (1) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment or divorce;
>
> (2) Before the child's birth, he and the child's natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, ...
>
> (3) After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and: (a) he has acknowledged his paternity of the child in writing filed with the local registrar of vital statistics; (b) he has sought to have his name placed on the child's birth certificate as the child's father, pursuant to R.S. 26:8–40; or (c) he openly holds out the child as his natural child; or (d) he is obligated to support the child under a written voluntary agreement or court order;
>
> (4) While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child;
>
> (5) While the child is under the age of majority, he provides support for the child and openly holds out the child as his natural child; .... [*N.J.S.A.* 9:17–43a(1) to (5).]

Here, R.R. and plaintiff were married; K.R. was born during their union, and was acknowledged as such by both parties during the divorce action. R.R. never contested paternity and was ordered to pay support for the child. Under the Parentage Act, these circumstances give rise to a presumption that R.R. is the natural father of K.R. The Parentage Act renders this presumption rebuttable:

b. A presumption under this section may be rebutted in an appropriate action only by clear and convincing evidence.... The presumption is rebutted by a court order terminating the presumed father's paternal rights or by establishing that another man is the child's natural or adoptive father. [*N.J.S.A.* 9:17–43b.]

To rebut "the presumption of legitimacy of a child born or conceived prior to the dissolution of marriage ..., the proof of illegitimacy must be such that 'there is no possible escape' from that conclusion." *K.S. v. G.S.*, 182 *N.J.Super.* 102, 107, 440 *A.2d* 64 (Ch.Div.1981) (citations omitted). Here, the guardian *ad litem*, on K.R.'s behalf, must produce evidence of that quality to rebut the presumption of R.R.'s paternity. Only then will the actual paternity of K.R. become an issue.

◼ In our view, the trial judge should have ordered R.R. to undergo the HLA test to which he consented. If the test excluded him from paternity, the presumption would have been rebutted. If not, the judge could have ordered testimony under oath by plaintiff and R.R. on the probability of parentage. (This is the way such a case will normally begin.) Not until the trial judge determined that the presumption of R.R.'s paternity was rebutted should he have begun an inquiry into defendant's status. At that point, *N.J.S.A.* 9:17–51a would come into play. That statute provides that "[t]he court may, and upon request of a party in any contested case brought under P.L.1983, c. 17 (C. 9:17–38 et seq.) shall, require the child, mother, and alleged father to submit to blood tests or genetic tests." *N.J.S.A.* 9:17–51a. Testing is not automatic. It should be ordered only after a delicate balance of all the circumstances surrounding the alleged paternity. In *S.S. v. E.S.*, 243 *N.J.Super.* 1, 5, 578 *A.2d* 381 (App.Div.1990), *aff'd*, 124 *N.J.* 391, 590 *A.2d* 1188 (1991), the trial judge ordered defendant to undergo testing to determine plaintiff's paternity. Defendant refused, was incarcerated and argued that the invasive procedure contemplated by the Parentage Act is unconstitutionally vague. 243 *N.J.Super.* at 5, 578 *A.2d* 381. On appeal, we held that blood tests are searches within the intendment of the Fourth Amendment and that they must be evaluated in that context:

[T]he plaintiff should be required to show, as a prerequisite to court ordered blood tests, that there is an articulable reason for suspecting the defendant is the father. [243 *N.J.Super.* at 12, 578 *A.*2d 381.]

\* \* \* \* \* \* \* \*

A request for blood tests should be made at the pretrial conference accompanied by either documentary submissions or testimony sufficient to enable the court to determine whether there is an articulable reason for suspecting that the defendant is the father. If the movant satisfies this threshold standard the court should enter an order directing that blood tests be taken. [243 *N.J.Super.* at 13, 578 *A.*2d 381.]

While *N.J.S.A.* 9:17–51a "does not expressly require a preliminary finding be made as the predicate to court ordered blood testing," *S.S. v. E.S., supra,* 243 *N.J.Super.* at 13, 578 *A.*2d 381, we concluded that such a finding is a constitutional imperative. This reasoning applies here.

We thus reverse and remand the case to the trial judge to undertake the inquiries we have described as a prerequisite to ordering defendant to take the blood test. The first step is to determine if the presumption of R.R.'s paternity can be rebutted. If not, the case should end. If so, the second inquiry is triggered: whether documentary submissions or testimony warrant the conclusion that there is an articulable reason for suspecting that defendant is the father of K.R. If this is answered in the negative, no test should be ordered. If the answer is affirmative, one additional matter presents itself: whether, at this point, the further inquiry of a blood test will be in the best interests of K.R. In *M.F. v. N.H.,* 252 *N.J.Super.* 420, 599 *A.*2d 1297 (App.Div.1991) we held the best interests test to be applicable in this kind of a case. Among the factors to be considered are the following:

(1) Harm to the child such as emotional injury, distrust, and possible confusion of knowing the parenting father is not biological father;

(2) Protection of the child's physical, mental, and emotional needs;

(3) The stability of the family relationship and extent of the intrusion that will result from a paternity determination;

(4) The consistency of the putative father's interest in the child;

(5) Societal stigma that may result or be perceived by establishing relationship, including placing the child's birth outside of the traditional wedlock setting;

(6) *Continuity of established relationships;*

(7) *Any extent to which uncertainty of parentage already exists in the child's mind;*

(8) *The child's interest in knowing family and genetic background, including medical and emotional history.*

Further, the determination of the best interests of the child may commonly require that the court have the benefit of an independent investigation and opinion as to the child's best interests. The Family Part judge, before proceeding with a best interests determination, whether it be on the papers or after a hearing as the case may require, should consider whether appointment of a guardian *ad litem* is necessary. *R.* 4:26–2(b)(4); *see Marriage of Ross* [245 Kan. 591,] 783 *P.*2d [331] at 336 [ (1989) ]. [*M.F. v. N.H.,* 252 *N.J.Super.* at 429–30, 599 *A.*2d 1297.]

The trial judge here correctly understood this standard and abided by the procedure later enunciated in *M.F.* insofar as he appointed a guardian *ad litem* for K.R. What he failed to do was to establish the factual predicate for resolution of the final issue.

Reversed and remanded.