**DEPARTMENT OF HUMAN SERVICES on Behalf of Carey–Ann BOULANGER**

v.

**Normand COMEAU.**

Supreme Judicial Court of Maine.

Argued March 27, 1995.

Decided Aug. 4, 1995.

Andrew Ketterer, Atty. Gen. and James A. McKenna (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Justin W. Leary (orally) and Leonard I. Sharon, Laskoff & Sharon, Lewiston, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

The Department of Human Services appeals from a judgment entered in the Superior Court (Androscoggin County, *Delahanty, J.*) affirming a dismissal by the District Court (Auburn, *Gorman, J.*) of the Department's paternity action against Normand Comeau brought on behalf of Carey–Ann Boulanger, the daughter of Helen Boulanger. Because we conclude that *res judicata* does not bar Carey–Ann's action for paternity, we vacate the judgment.

In 1983, Helen Boulanger filed a complaint in the District Court against the putative father, Normand Comeau, for the determination of the paternity of her daughter, Carey–Ann, pursuant to 19 M.R.S.A. § 272 (Supp. 1994). The case was immediately transferred to the Superior Court. After two years passed without prosecution, the court dismissed the case with prejudice pursuant to M.R.Civ.P. 41(b)(1).[1]

---

1. M.R.Civ.P. 41(b)(1) provides that "[t]he court, on its own motion, after notice to the parties, and in the absence of good cause to the contrary, shall dismiss an action for want of prosecution at any time more than two years after the last docket entry showing any action taken therein by the plaintiff other than a motion for a continuance."

In 1993, the Department filed the instant action on behalf of itself and Carey–Ann to establish paternity. The District Court granted Comeau's motion to dismiss on the basis of our decision in *Department of Human Servs. v. Richardson*, 621 A.2d 855 (Me.1993), concluding that dismissal with prejudice of the prior paternity action brought by Helen Boulanger barred the paternity action brought by the Department on its own behalf and on behalf of Carey–Ann. The Superior Court affirmed the dismissal. Although the Department concedes on appeal that the action on its own behalf to establish paternity is barred by *res judicata*, it contends that Carey–Ann's right to establish her paternity has not been barred by the dismissal of her mother's paternity action.

The doctrine of *res judicata* bars relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action. *Irving Pulp & Paper Ltd. v. Kelly*, 654 A.2d 416, 418 (Me.1995); *Richardson*, 621 A.2d at 856. The critical issue here is whether there is privity between Helen Boulanger and her daughter Carey–Ann.

Privity exists when there is a "mutual relationship . . . that establishes [a] commonality of interest." *Northeast Harbor Golf Club, Inc. v. Town of Mount Desert*, 618 A.2d 225, 227 (Me.1992). A privity relationship generally involves a party so identified in interest with the other party that they represent one single legal right. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 41 (1982). "In order for the doctrine of privity to be invoked, the first litigation must provide substantial protection of the rights and interests of the party sought to be bound by the second." *N.M. v. J.G.*, 255 N.J.Super. 423, 605 A.2d 709, 712 (N.J.Super.Ct.App.Div.1992); RESTATEMENT (SECOND) OF JUDGMENTS § 41. Our determination whether Carey–Ann is in privity with her

mother requires an analysis of the interests at stake in their respective paternity actions.

A mother's interest in establishing the paternity of her child, much like that of the Department of Human Services, is primarily financial. *See Department of Human Servs. v. Webster*, 398 A.2d 792, 794 (Me. 1979); 19 M.R.S.A. §§ 271 & 272 (1981 & Supp.1994). Although the child has an interest in ongoing financial support from her father, she also has interest in receiving an inheritance and in having her father's identity legally established. *Department of Human Servs. v. Vining*, 617 A.2d 555, 559 (Me.1992). *See Webster*, 398 A.2d at 794 ("The child has a prospective interest, arising from the father-child relationship, in the benefits normally flowing from that relationship over and above necessary ·financial support."). These differing interests of mother and child in a paternity determination preclude any finding of privity when the mother settles her paternity action or permits it to be dismissed with prejudice. There are too many reasons that a mother may have for settling the action or failing to prosecute it that are contrary to the interests of her child.

By contrast, if the mother or daughter brings an action to establish paternity that is fully litigated on the merits, "these abstract or even substantive distinctions between the totality of rights in which a child may be interested as opposed to the rights that are sought to be enforced by a mother or public official, would not justify the bringing of repetitious litigation of the issue of paternity. . . ." *Guziejka v. Desgranges*, 571 A.2d 32, 34 (R.I.1990). *See* RESTATEMENT (SECOND) OF JUDGMENTS, § 19 cmts. a & b(b) (1982). When a paternity action is litigated to completion, the differing interests of the mother that may have motivated the action are no longer relevant, and the child's interest is adequately represented even if the child is not made a party to the action. *Guziejka*, 571 A.2d at 34.

These general propositions are consistent with our previous cases.[2] In *Richardson*, we

---

2. Our decision is also consistent with decisions in other jurisdictions. *Compare E.I.B. By I.J. v. J.R.B.*, 259 N.J.Super. 99, 611 A.2d 662 (N.J.Super.App.Div.1992) (jury verdict in favor of the putative father denying paternity precluded child from bringing second action to establish paterni-

considered the effect of a prior adjudication of nonpaternity in an action brought by the putative father against the mother on a subsequent action brought by the Department of Human Services to establish the father's paternity of the same child. Even though the Department was not a party to the first action, we held that there was a sufficient relationship and commonality of interest between the Department and the mother to justify a determination that the Department was in privity with her in the first action and that the second action was barred by *res judicata*. *Richardson*, 621 A.2d at 856–57. We explained:

> Generally speaking, the Department and the mother share an interest in establishing a child's paternity so that the mother can obtain support from the father and the Department can recoup funds it has expended on behalf of the child. This commonality of interest is demonstrated by the fact that the Department has, in the past, filed complaints for paternity, naming both itself and the mother as plaintiffs.

*Id.* at 856. We were also mindful of the fact that the first action to establish paternity was fully litigated. *Id.* at 857 n. 4.

When the first action is not litigated to completion, we have declined to acknowledge a privity relationship. In *Webster*, we addressed the *res judicata* effect of a paternity suit that was settled, thereby releasing the alleged father from all liability for the child in exchange for a lump sum payment to the mother. When the Department later sought to enforce the father's support obligations, we stated that

[a]t the time of the settlement, the pressure of the mother's immediate financial needs may place her under a handicap in bargaining for future support of the child. Moreover, if the mother expects to be the beneficiary of AFDC payments, the prospect of the father's contribution may not be a matter of major concern to her. In contrast, the State's interest is to obtain contributions from the father where possible. The child's interest, also, may be quite different from the mother's.... In short, the interests of the mother, the State, and the child are divergent, and we see no sufficient reason to depart from the general principle that the settlement of a legal action by the parties to it does not terminate the rights of strangers to the action; that is, of persons who were not represented by the parties or otherwise in privity with them.

*Webster*, 398 A.2d at 794. When no privity existed, the Department was not barred from bringing the second action. *Id.*

■ In *Department of Human Servs. v. Lowatchie*, 569 A.2d 197 (Me.1990), the Department's failure to actively pursue its complaint to establish paternity ultimately resulted in the court's dismissal of the action with prejudice pursuant to M.R.Civ.P. 41(b)(1). Almost ten years later, the Department brought the same complaint against the same alleged father to establish paternity for the same child. Because the earlier dismissal served as an adjudication on the merits, and both actions involved the same parties and issues, we held that the second action was barred by *res judicata*. *Lowatchie*, 569 A.2d at 200. The decision in *Lowatchie* does not control the decision here.[3] The involvement

---

ty) *and Department of Human Servs. v. Seamster*, 36 Ark.App. 202, 820 S.W.2d 298 (1991) (finding privity between mother and child where first action, although child was not and could not have been a party, afforded the mother a full opportunity to litigate the question of paternity) *with State ex rel. Div. of Human Servs. v. Benjamin P.B.*, 183 W.Va. 220, 395 S.E.2d 220 (1990) (prior action dismissed at mother's request did not bar second action by child) *and Johnson v. Hunter*, 447 N.W.2d 871 (Minn.1989) (mother's action for paternity orally dismissed for failure to prosecute did not bar action brought by the child to establish paternity where the child was not a party to the first suit, was not represented by

counsel in the first action, and did not share a common interest in pursuing the first action).

3. We are aware of our statement in *Vining* that dismissal with prejudice of a paternity action brought by the Department of Human Services forever precludes a subsequent legal determination that the defendant in such a case is the father of the child for whom support payments were sought in the Department's action. We cited *Lowatchie* for that proposition. With our decision today, we make clear that our statement in *Vining* about the preclusive effect of a prior dismissal applies only to those in privity with the party plaintiffs.

of the identical parties in *Lowatchie* eliminated any need to analyze the privity issue that is central to this case.[4]

The entry is:

Judgment vacated. Remanded to the Superior Court for remand to the District Court for further proceedings consistent with the opinion herein.

All concurring.

---

**4.** We recognize that the Legislature's recent amendment to the paternity statute eliminates the issue we now resolve by preventing the entry of a dismissal with prejudice in a paternity action:

> Dismissals of paternity actions must be *without prejudice* in all cases except:
>
> A. When an adjudication on the merits has occurred; or
>
> B. When the Department of Human Services is a party to the action and the department consents to the dismissal with prejudice.

19 M.R.S.A. § 286 (Supp.1994) (emphasis added).

This statutory change does not preclude us from arriving at the same result by the application of the judicial doctrine of *res judicata*.