280 N.J. Super. 57 (1995)
654 A.2d 500
STATE OF NEW JERSEY AND JOANNE LONGSTREET, PLAINTIFFS-RESPONDENTS,
v.
KENNETH MICHAEL VOLK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 15, 1995.
Decided March 7, 1995.
*58 Before Judges PRESSLER, LANDAU and CONLEY.
Mark J. Molz, attorney for appellant.
D. Neil Manuel, attorney for respondent Burlington County Welfare Board.
The opinion of the court was delivered by LANDAU, J.A.D.
*59 On or about August 26, 1986, Joanne Longstreet began a child support and custody proceeding in Burlington County, bearing docket number FD-03-289-87, against Kenneth Michael Volk. The record discloses an order clearly dated September 25, 1986, dismissing the matter because "no one appeared." Shortly thereafter, the Burlington County Welfare Board served Volk with a complaint, bearing docket number FD-03-289-87G, seeking an adjudication of paternity and support for a child born to Longstreet on May 14, 1986.
Volk was simultaneously scheduled for a mandatory "intake conference" with a probation officer on December 19, 1986.
A consent order was thereafter entered in the Family Part by Volk and the Welfare Department on January 5, 1987, reflecting Volk's denial of paternity and his agreement to take a blood test for which he would pay $300 within 90 days. Consent to entry was conditioned upon the understanding that the Welfare Board could move for modification of the order upon notice to the parties. Volk's $300 payment in full was made to the Probation Department on or about February 2, 1987. The case was marked "discharged" in July 1987, apparently because Longstreet had moved from New Jersey to Virginia. Longstreet was not further heard from until November 1993 when she initiated a petition in Virginia for establishment of paternity and for support under RURESA[1], received in Burlington County during December 1993.
Volk moved to dismiss the RURESA complaint, certifying that he was not the father of the child and that he and Longstreet had broken off any relationship at least three months before the child was conceived. (Presumably based upon a projection from its birth date.) He also urged that the earlier dismissal should be given effect; that he had complied with the January 5, 1987, order; and that Longstreet had departed with the child, never *60 contacting him since, thus demonstrating that she knew Volk was not the father. He also urged that equitable reasons precluded reopening the case, citing Moore v. Hafeeza, 212 N.J. Super. 399, 515 A.2d 271 (Ch.Div. 1986).
In an opinion dated January 26, 1994, the motion judge denied Volk's motion to dismiss. The judge found that there never was a prior dismissal of the paternity proceeding initiated in 1986, that the matter was discontinued because plaintiff had moved to Virginia, and that, absent a prior adjudication, "there is no basis ... to dismiss the current proceedings." Volk appeals. We reverse, because the trial judge failed to consider the significant equities supporting Volk's defense, but subject to certain rights of the child as detailed below.
Volk complied promptly with his undertaking to pay for a blood test under the January 7, 1987, order. Earlier, Longstreet had failed to appear in court, causing the initial dismissal in September 1986. She then took the child to Virginia while the paternity case reinstituted by the Welfare Board was pending without seeking permission of the court upon cause shown. See N.J.S.A. 9:2-2 (prohibiting removal of a child of parents living separately while the Superior Court has jurisdiction). Thereafter, the child whose paternity and support has now been placed in issue grew to the age of nine with no opportunities for contact with Volk, much less any bonding contact, and with no incidents of Volk's alleged paternity.
Even were Volk now determined to be the biological father of the child, it would be in name only. They are, by virtue of Longstreet's actions, total strangers, a status we deem to be irremediable, particularly given the child's remote domicile. We see little practical difference between the circumstances in the present suit and those considered to constitute laches in Hafeeza, supra, in which a natural mother's claim for paternity and support, brought fifteen years after dismissal of a prior proceeding, was held barred by laches. The nine years of non-contact since birth of the child has created a chasm that, as a practical matter, *61 is no less wide than that in Hafeeza. It is too serious to bridge meaningfully and, together with Volk's diligent compliance with the first order, Longstreet's improper departure, and nearly eight years of inaction, affords ample basis for our conclusion that laches bars this complaint. We note that in Matter of Adoption of a Child of Indian Heritage, 111 N.J. 155, 182 n. 8, 543 A.2d 925 (1988), the Supreme Court, citing Hafeeza, found in 1988 that a custody action of a child born in 1984 would be barred by laches if thereafter instituted.
Moreover, the court here ordered Volk to submit to a blood test. Such testing is not automatic. It should be ordered only after "a delicate balance of all the circumstances surrounding the alleged paternity." N.M. v. J.G., 255 N.J. Super. 423, 433, 605 A.2d 709 (App.Div. 1992). Nothing in the bare-bones complaint or the record gives rise to the constitutional requisite of finding from documentary submissions or testimony an articulable basis for suspecting Volk to be the father.[2] All that appears, in fact, is his sworn denial of fathering the child and his explanation therefor.
In consequence, we reverse the order under review and direct that judgment be entered dismissing Longstreet's action.
In so doing, however, we do not retreat from our holding in T.W. v. A.W., 224 N.J. Super. 675, 684-685, 541 A.2d 265 (App.Div. 1988), concerning the right of the child to a determination of paternal lineage, separate from the support-based efforts of the mother's paternity action, nor from our conclusion in E.I.B. by I.J. v. J.R.B., 259 N.J. Super. 99, 105, 611 A.2d 662 (App.Div.), certif. denied, 130 N.J. 602, 617 A.2d 1223 (1992), that in order to bar a child from relief by reason of a mother's prior paternity action under N.J.S.A. 9:17-45, the mother must be found to have fully represented the child's rights.
*62 In N.M. v. J.G., supra, we recognized the distinct interest of a child in vindicating his or her desire to know, for psychological and health reasons, the identity of a natural father, and declared that notwithstanding the laches of the plaintiff, a paternity action could be amended to include the child as plaintiff for such purposes, if in the child's best interests. To this we would add that upon an adequate showing that the mother is unable to provide reasonable support for a minor child, a guardian ad litem may also pursue his or her support interests to the extent not collaterally estopped by the mother's prior litigation. As we noted in N.M. v. J.G., supra, 255 N.J. Super. at 431, 605 A.2d 709, N.J.S.A. 9:17-45(b) affords to the child an opportunity to bring an action to establish paternity until five years from attaining the age of eighteen, subject to a collateral estoppel bar only if the issue was "fully and fairly litigated" in a prior proceeding.
Reversed and remanded for entry of an order of dismissal of the present action subject to preservation of the child's right to ascertain paternity within the limitations above set forth upon a sufficient preliminary showing of reason to believe that Volk is the father.
Reversed and remanded.
NOTES
[1] The Revised Uniform Reciprocal Enforcement of Support Act, N.J.S.A. 2A:4-30.26 et seq.
[2] As to the constitutional predicate for compelling a blood test, see N.M. v. J.G. supra; S.S. v. E.S., 243 N.J. Super. 1, 5, 578 A.2d 381 (App.Div. 1990), aff'd., 124 N.J. 391, 590 A.2d 1188 (1991).