721 A.2d 738 (1998)
MONMOUTH COUNTY DIVISION OF SOCIAL SERVICES, on Behalf of Virginia L. HALL and Shirley Williams, Plaintiff-Respondent,
v.
P.A.Q., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1998.
Decided December 22, 1998.
James P. Jones, Brielle, for defendant-appellant.
Patrick J. Boyle, for plaintiff-respondent (Thomas H. Klein, attorney, Eatontown; Mr. Boyle, on the brief).
*739 Before Judges MUIR, Jr.,[1] KEEFE and EICHEN.
The opinion of the court was delivered by EICHEN, J.A.D.
Defendant P.A.Q. appeals from an order denying his motion to vacate a default judgment requiring him to pay child support arrears of $9,675 for a child born out of wedlock who was determined not to be his child. We reverse.
On May 25, 1994, plaintiff Monmouth County Division of Social Services (MCDSS), on behalf of V.L.H.,[2] filed a "Complaint for Paternity and Support," pursuant to N.J.S.A. 9:17-45a and 53c, against defendant P.A.Q. The complaint sought a judgment determining that defendant was the father of L.I.H., the biological son of V.L.H. L.I.H. was born January 5, 1991. The complaint also sought support and repayment of all public assistance and medical expenses.
The complaint, which purports to be a verified complaint, states as follows:
Monmouth County Division of Social Services, in the Department of Human Services of the County of Monmouth, Kozloski Road, Freehold Twp., N.J. says:
1. [V.L.H.] is the MOTHER of: [L.I.H.] D.O.B. 01/05/91H57435 born out of wedlock.
2. The child is receiving public assistance (AFDC N.J.S.A. 44:10-1 et seq.) from the Monmouth County Division of Social Services and all support rights have been assigned pursuant to N.J.S.A. 44:10-2.
3. The plaintiff seeks to establish paternity pursuant to the New Jersey Parentage Act, N.J.S.A. 9:17-38 et seq.

4. There have been no prior family court actions except: N/A
WHEREFORE, plaintiff prays for judgment against the defendant:
1. Determining the defendant to be the father of the child.
2. Requiring the defendant to support the child.
3. Requiring defendant to provide medical and dental benefits coverage for the child.
4. Repayment of all public assistance and medical expenses.
NOTICE CONCERNING JURY TRIAL
If you deny you are the father of the child, the trial shall be by the Court without a jury, unless you file with the Court a written request for a trial by jury within ten (10) days after service of the Complaint.
DATED: 05/16/94 /s/______________________
 Thomas H. Klein, Esq.
 Attorney for Plaintiff
 Monmouth County Division of
 Social Services

VERIFICATION
1. I am employed by the plaintiff, Monmouth County Division of Social Services.
2. The statements set forth in the foregoing Complaint are from the files and records of the plaintiff.
I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.
DATED: 05/16/94 /s/_____________________
 SUSAN GATSON
 Monmouth County Division of
 Social Services
Service was effectuated on June 16, 1994 at defendant's residence by delivery of a summons and complaint to defendant's brother who was visiting from out of the country. The summons required defendant to appear in the Superior Court, Chancery Division, Family Part, on June 30, 1994. A transcript reflects that on that date defendant failed to appear and a hearing officer entered the following "findings" on the record:

*740 [V.L.H.] versus [P.A.Q.], FD13-2668-94C. The defendant was personally served on 6/16/94 by default established paternity. An order of $75 per week effective May 25, 1994, $25 toward arrears, for a total of $100 per week by income withholding and medical insurance if available.
Based solely on the foregoing, on July 5, 1994, a Family Part judge entered an "order of paternity" (the default judgment), indicating that paternity was determined "by default" and requiring defendant to pay weekly child support as found by the hearing officer.
Eight months later, on March 8, 1995, the Monmouth County Probation Department filed a notice of motion seeking enforcement of the default judgment. The notice was sent by certified mail to the same address where the summons and complaint had been served. It was returned to the probation department in an envelope marked "refused." A hearing on the motion was scheduled for March 29, 1995, and when defendant failed to appear, an order was entered on April 4, 1995 continuing defendant's obligation to pay child support in the sum of $100 per week. The order reflected accrued child support arrears of $3,300.
Sixteen months later, the county filed another enforcement motion, on August 27, 1996, which it sent by certified mail to defendant's residence. It too was returned marked "refused." On September 26, 1996, after defendant failed to appear in response to the notice, an order was entered directing issuance of a bench warrant for defendant's arrest. The order set a "release figure" of $9,000 which represented accrued arrears through the date of the order. On November 20, 1996, defendant appeared before the Family Part judge in response to the warrant, and after paying $750, he was released. By then, the total amount of delinquent support was $9,675.
On December 4, 1996, defendant filed a motion pro se seeking "a rehearing for paternity."[3] On February 11, 1997, after a hearing officer denied his motion, a different Family Part judge reviewed the matter under R. 4:50. Defendant, appearing pro se, contended that he had spoken to V.L.H. after receiving "a letter from Freehold about support." He explained that V.L.H. told him she had named him as the father after the man she had been living with for four or five years left her and because "[defendant] was the closest person to her." Defendant maintained that he had not received the initial complaint but that after he received a notice to come to court, he had appeared on two occasions. He stated that on each occasion "the judge that presided tell me that I am excused." There is no evidence of these alleged appearances in the record.
The judge found that defendant had delayed too long in seeking relief from the default judgment and, at least initially, denied the motion. However, the judge reversed his ruling and directed defendant to undergo genetic testing at his own expense after defendant pointed out that, prior to the hearing, counsel for MCDSS had indicated he had no objection to genetic testing so long as the results did not excuse defendant from paying the accrued arrears. On February 11, 1997, the judge entered an order to that effect, indicating that "[i]f paternity is excluded, support as of 12/4/97 [sic] is vacated."
Defendant submitted to testing on February 25, 1997. The results of the testing conclusively excluded defendant as the child's biological father.
On June 24, 1997, following a de novo hearing at which defendant was again unrepresented by counsel, the same Family Part judge vacated that portion of the default judgment filed on July 5, 1994 which had determined defendant to be the child's biological father, relieved him from paying prospective support, but ordered defendant to pay the $9,675 in accrued arrears at the rate of $20 per week. This appeal ensued.
On appeal, defendant challenges the entry of the default judgment raising numerous evidentiary and procedural arguments. In addition, defendant contends the judge abused his discretion by refusing to vacate the judgment in its entirety under R. 4:50. Defendant argues in substance that the allegations *741 in the complaint and the "proofs" relied upon for entry of judgment were insufficient. He also asserts that he demonstrated exceptional circumstances to justify setting aside the default judgment. We agree and reverse.

I.
Initially, we observe that the complaint is vague and does not expressly allege that defendant is the child's father. But even if the complaint could be viewed as sufficient to apprise defendant that MCDSS was seeking to declare him the biological father of L.I.H., the complaint was not verified as required by the rules of court.
Rule 5:14-1 requires a verified complaint in a proceeding to determine the existence or non-existence of the parent and child relationship. Rule 1:4-7 provides that a verification may incorporate the allegations of the pleadings by reference if made on "personal knowledge ... and the allegations are of facts admissible in evidence to which the affiant is competent to testify." R. 1:6-6; see also Sylvia B. Pressler, Rules Governing the Courts of the State of New Jersey 78-79 (1998) (comment to R. 1:6-6).
The "verification" in this case, which was signed by an employee of MCDSS and not by the mother of the child, states only that the MCDSS employee "is employed by the plaintiff, [MCDSS]" and that "[t]he statements set forth in the foregoing Complaint are from the files and records of the plaintiff" and that the statements are "true."
However, the complaint contains no "statements" accusing defendant of being the biological father of L.I.H. Certainly, it contains no "facts [concerning defendant's parentage] made on personal knowledge admissible in evidence to which the affiant is competent to testify." Consequently, we consider the "verification" a nullity, see State v. One (1971) Datsun, 189 N.J.Super. 209, 211, 459 A.2d 1183 (App.Div.1983), and therefore, the complaint was insufficient to invoke the jurisdiction of the court. See Lippmann v. Hydro-Space Technology, Inc., 77 N.J.Super. 497, 503-04, 187 A.2d 31 (App. Div.1962).
In Little v. Streater, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981), the United States Supreme Court expressly discussed the important interests involved in a paternity suit:
The private interests implicated here are substantial. Apart from the putative father's pecuniary interest in avoiding a substantial support obligation and liberty interest threatened by the possible sanctions for noncompliance, at issue is the creation of a parent-child relationship. This Court frequently has stressed the importance of familial bonds, whether or not legitimized by marriage, and accorded them constitutional protection. Just as the termination of such bonds demands procedural fairness, so too does their imposition. Through the judicial process, the State properly endeavors to identify the father of a child born out of wedlock and to make him responsible for the child's maintenance. Obviously, both the child and the defendant in a paternity action have a compelling interest in the accuracy of such a determination.
[Id. at 13, 101 S.Ct. at 2209, 68 L.Ed.2d at 637 (citations omitted).]
The complaint in this case was filed in May 1994. In December 1994, the "New Jersey Parentage Act," N.J.S.A. 9:17-38 to -59 (the Act), was amended to include a provision governing default orders in paternity actions. See N.J.S.A. 9:17-52.1. That section of the Act now requires the biological mother to execute "a sworn statement . . . indicating the parentage of the child" before a default can be entered. Although that section of the Act was not in effect at the time this case was commenced, and therefore a sworn statement by the biological mother was not statutorily mandated, fundamental fairness nonetheless required MCDSS to at least allege some facts under oath demonstrating that the biological mother was accusing defendant of being Lamar's father before a valid default could be entered against him.
In its respondent's brief MCDSS asserts for the first time that it had such a sworn statement from V.L.H. in its files. As a threshold matter, we note that this court does not consider evidential material not contained *742 in the record. See County of Bergen v. Borough of Paramus, 79 N.J. 302, 310, 399 A.2d 616 (1979); R. 2:5-5. Even if it did, the information comes too late. It is at the inception of a paternity action that a sworn statement of parentage, or equivalent evidence, should be asserted so that a defendant is given proper notice that he is being accused of being a child's biological father. Such a statement must be made part of the complaint, either by incorporating the contents of the statement into the complaint and having the biological mother sign the complaint under oath, or by attaching the sworn statement to the verified complaint, and having the county employee responsible for its books and records attest to its authenticity, or, at the very least, by alleging in the verified complaint that the defendant is the biological father and that the county's records contain competent evidence to support that allegation.

II.
In addition to the insufficiency of the complaint, no proofs whatsoever were adduced at the hearing on June 30, 1994 before the Child Support Hearing Officer[4] to support the allegation of paternity against defendant. In particular, there is no evidence that the mother was present or that counsel for MCDSS presented a certificate of parentage or even told the Child Support Hearing Officer that one existed. Under the circumstances where the complaint was deficient and there was no evidence presented to the hearing officer to support the mother's allegation of paternity against defendant, as far as we can tell, default was improvidently entered. While we appreciate the high volume of paternity and support matters that come before the Child Support Hearing Officers every day, nonetheless, where a paternity complaint is vague or conclusory, there is an especial call upon the hearing officer to exercise his or her jurisdiction more judiciously to assure that adequate proof of parentage is adduced and to create a complete record of the proceedings so that a proper review by this court can be made. The Family Part judges who enter these paternity and support default orders rely on the accuracy of these findings and the recommendations of the officers. Based on the record before us in this case, we are unable to determine the basis of this hearing officer's determination and therefore its recommendation can not support the entry of judgment by the Family Part judge.

III.
Even if the complaint and hearing were deemed sufficient, the Family Part judge should not have refused to vacate the entire judgment. Defendant's application for relief from the default judgment was reviewed under R. 4:50-1. Although a motion under this rule "is addressed to the sound discretion of the trial court, it should be guided by equitable principles in determining whether relief should be granted or denied." Housing Auth. of Morristown v. Little, 135 N.J. 274, 283, 639 A.2d 286 (1994) (citing Hodgson v. Applegate, 31 N.J. 29, 37, 155 A.2d 97 (1959) and Shammas v. Shammas, 9 N.J. 321, 328, 88 A.2d 204 (1952)). Moreover, such applications should be viewed with great liberality. Marder v. Realty Constr. Co., 84 N.J.Super. 313, 319, 202 A.2d 175 (App.Div.), aff'd, 43 N.J. 508, 205 A.2d 744 (1964).
Here, the sole ground for relief available to defendant is that specified in R. 4:50-1(f) because defendant's application to vacate the default judgment was made more than one year after its entry. See R. 4:50-2. "[N]o categorization can be made of the situations which would warrant redress under subsection (f). The very essence of (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice." Housing Auth. of Morristown v. Little, supra, 135 N.J. at 286, 639 A.2d 286 (quoting Court Inv. Co. v. Perillo, *743 48 N.J. 334, 341, 225 A.2d 352 (1966)) (internal punctuation omitted). Because the rule applies only to exceptional circumstances, each case must be decided on its own specific facts. Baumann v. Marinaro, 95 N.J. 380, 395, 471 A.2d 395 (1984); see also Housing Auth. of Morristown v. Little, supra, 135 N.J. at 286, 639 A.2d 286.
Concededly, defendant failed to answer the complaint and did not act promptly to seek relief from the judgment after V.L.H. told him she had named him as L.I.H.'s father; nonetheless, MCDSS's efforts to enforce its judgment were just as dilatory. Indeed, MCDSS waited eight months before it filed its first motion to enforce the judgment, and another sixteen months before the second motion was filed. Had it moved more quickly, an earlier determination of defendant's paternity could have been made and the arrears might not have grown to $9,675. We also note that once defendant did appear and was granted leave to obtain genetic testing, he acted immediately to undergo the testing.
We further observe that MCDSS indicated it was not truly opposed to setting aside the default judgment so long as the arrears were not excused. Accordingly, the judge vacated the judgment prospectively. The problem with this bifurcated approach is that it produces an anomalous result. The fact is defendant is not the biological father of L.I.H., and the court-ordered genetic testing conclusively proves that fact. To accept the test results for one purpose, and repudiate them for another, cannot be fairly rationalized. As another jurisdiction has recently recognized, "denying the county the opportunity to collect child support from a man who it knows is not the child's father does not deny the county any right deserving protection." Losoya v. Richardson, 584 N.W.2d 425, 429 (Minn.Ct.App.1998).[5] Significantly, it is unclear on this record what, if any, legal impediment exists to MCDSS's seeking to recover the money from the actual biological father. Hence, especially in the circumstances of this case, we conclude defendant's right to be free from paying back support for a child who is not his child is paramount to the county's right to recover from him the financial aid it paid on behalf of the child, especially where it is required to pay for that financial assistance no matter who the biological father is.

IV.
Lastly, we reject defendant's request for a remand of the case to the Family Part to determine whether he is entitled to a refund of the money he paid to MCDSS for L.I.H.'s support.[6] The request for a refund raises issues not addressed by the parties in the trial court and not adequately briefed on appeal. Accordingly, we decline to consider them. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). We also reject defendant's request for a remand to the Family Part for an award of attorney's fees.
The default judgment is reversed, and the matter is remanded for entry of judgment absolving defendant of the obligation to pay past child support.
NOTES
[1] Judge Muir did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] On December 14, 1994, an administrative change of beneficiary order was entered indicating that the child had gone to live with S.W., his maternal grandmother, and had begun to receive public assistance under the grandmother's grant. Accordingly, MCDSS has filed this appeal on behalf of both V.L.H. and S.W.
[3] We note that defendant did not expressly request "a rehearing for support," but, in view of his pro se status, we review the matter as though he had sought relief from the entire judgment.
[4] Rule 5:25-3 created the Office of the Child Support Hearing Officer. Child Support Hearing Officers are appointed by the Chief Justice and are under the supervision of the Administrative Director of the Courts. They have jurisdiction to hear and make recommendations in uncontested paternity cases. The Family Part judges base their orders on these recommendations. R. 5:25-3(b)(1).
[5] Indeed, paternity aside, the record lacks evidence of any relationship whatsoever between defendant and the child.
[6] The record reflects defendant paid $750 as "release" money after he responded to the bench warrant. The record does not disclose any other payments.