779 A.2d 1135 (2001)
MONMOUTH COUNTY DIVISION OF SOCIAL SERVICES, on Behalf of L.R.R., Plaintiff,
v.
D.J.D., Defendant.
C.O., Plaintiff,
v.
L.R.R., Defendant.
Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County.
Decided March 8, 2001.
*1136 Patrick J. Boyle, for plaintiff Monmouth County Division of Social Services on behalf of L.R.R.
D.J.D., defendant pro se.
C.O., plaintiff pro se.
L.R.R., defendant pro se.
PERRI, J.S.C.
The court in this matter is called upon to determine whether a man who has executed a Certificate of Parentage pursuant to N.J.S.A. 9:17-41(b) and has been ordered to pay child support for a child later determined to be the biological child of another is entitled to prospective relief from the child support order, reimbursement *1137 from the Monmouth County Division of Social Services ("the Division") for monies previously paid on behalf of the child and abatement of arrears that accrued during the period the order was in effect. The court finds that, while prospective child support can be properly terminated, the putative father remains liable to the Division for obligations he incurred while the child support order was in effect. The court further finds that the putative father under the circumstances of this case has a right of reimbursement from the biological father for amounts he was required to pay as support for the biological father's child.
On May 29, 1998, the Division filed a Complaint for Support against D.J.D. The Complaint recited that L.R.R. was receiving public assistance for J.L.D., born April 21, 1997, and her rights to support had been assigned to the Division pursuant to N.J.S.A. 44:10-1 et seq. The Division alleged that D.J.D. was the father of J.L.D. and that he was obligated to pay support on behalf of his child.
D.J.D. acknowledged paternity of J.L.D. when the parties appeared before a child support hearing officer on July 8, 1998. The hearing officer computed D.J.D.'s child support obligation to be $107 per week pursuant to the Child Support Guidelines. The amount of $10 per week was added for arrears for a total weekly support obligation of $117. D.J.D. appealed the hearing officer's recommendation and on August 10, 1998, the court entered an order requiring D.J.D. to pay $117 in weekly child support for J.L.D.
L.R.R. gave birth to a second child, D.D., on September 13, 1998. On September 15, 1998, D.J.D. acknowledged paternity of D.D. without the benefit of genetic testing and signed a Certificate of Parentage. L.R.R. and D.J.D. had lived together sporadically throughout the course of their relationship and lived together for several months after D.D. was born. When the parties separated, D.J.D. continued to have visitation with J.L.D. and D.D., and bought diapers, milk and other items for the children as requested by L.R.R.
D.J.D. fell behind in his child support payments for J.L.D. and a child support bench warrant was issued against him. The warrant was reviewed after other charges on May 15, 1999, at which time D.J.D. was released and directed to pay child support through income withholding. As of that date, D.J.D. owed approximately $3,750 in child support arrears.
On May 20, 1999, D.J.D. filed a motion for a reduction in child support. A week later, the Division filed a Complaint against D.J.D. seeking child support for D.D. Prior to the hearing of both matters on June 10, 1999, the parties entered a consent order which amended the prior Complaint to add D.D. as a dependent child and reduced D.J.D.'s weekly child support obligation to $61 per week for both children[1] plus $10 toward arrears. Although D.J.D. made child support payments over the next year, he still owed arrears of approximately $3,210 as of June 15, 2000.
On June 15, 2000, D.J.D. filed a motion for genetic testing. He stated in his moving papers that L.R.R. had recently told him that he was not D.D.'s father and that she had located the child's "real father." On June 28, 2000, L.R.R. filed a motion to compel genetic testing of D.J.D. and D.D., stating that she did not think that D.J.D. was D.D.'s father. On July 5, 2000, C.O. filed a companion action to compel genetic *1138 testing, claiming that he was D.D.'s biological father. C.O. indicated in his moving papers that he wanted to know if D.D. was his child and, if so, to have her name changed and a visitation schedule established.
The motions were heard on August 1, 2000, with L.R.R., D.J.D. and C.O. representing themselves pro se. The Division opposed the motions and was represented at the hearing by its counsel, Patrick J. Boyle, Esq. At the hearing, L.R.R. testified that C.O. had approached her earlier in the year and told her that he had seen a picture of D.D. while visiting with a member of L.R.R.'s family. He felt that D.D. looked very much like he did as a baby and thought that she might be his child. L.R.R. admitted at the hearing that she had had sexual relations with C.O. on one occasion prior to D.D.'s birth and that the condom the couple had been using had broken. She testified that she could not recall the date when this occurred and therefore had no idea that D.D. might be C.O.'s child. D.J.D. testified that, prior to L.R.R.'s revelation, he had no reason to believe that he was not D.D.'s father.
Based upon these facts, the court found that it was in the best interests of D.D. to grant the motions for genetic testing. See M.F. v. N.H., 252 N.J.Super. 420, 427, 599 A.2d 1297 (App.Div.1991). Tests were conducted on all parties and on November 9, 2000, the court ruled that the results excluded D.J.D. as D.D.'s biological father and established paternity of C.O. A court order was entered terminating D.J.D.'s child support obligation for D.D. effective June 15, 2000. The court reserved decision on D.J.D.'s motion for abatement of child support arrears and a refund of money previously paid to the Division on behalf of D.D. The parties were granted leave to submit briefs and a brief on behalf of the Division was received by the court on December 4, 2000. Oral argument was heard on February 20, 2000.[2]
It is firmly established that the natural or biological parent of a child is always to be considered the primary recourse for child support "because society and its current laws assume that the natural parent will support his or her child." Miller v. Miller, 97 N.J. 154, 169, 478 A.2d 351 (1984). An exception may exist when a person voluntarily establishes an in loco parentis relationship with a child. Cumberland County Bd. v. W.J.P., 333 N.J.Super. 362, 365-366, 755 A.2d 1171 (App.Div. 2000).[3] In order for this duty of support to attach, however, it is not enough that the person merely accepts the obligation of support. Camden County Board of Social Services v. Yocavitch, supra at 31-32, 596 A.2d 769. There must also be some "positive *1139 action" by the obligor that interferes with the natural parent's support obligation, Miller v. Miller, supra at 170, 478 A.2d 351, or "a voluntary and knowing course of conduct" with respect to the child which constitutes an affirmative representation of parenthood. M.H.B. v. H.T.B., supra at 576, 498 A.2d 775.
In Monmouth County Div. of Soc. Servs. ex rel. Hall v. P.A.Q., 317 N.J.Super. 187, 721 A.2d 738 (App.Div.1998), certif. den., 160 N.J. 90, 733 A.2d 495 (1998), a default paternity judgment and support order was entered against the defendant based upon proofs that were later found to be insufficient to establish paternity. There was no indication in the record that the defendant had ever sought to establish a parent-child relationship with the child in question. To the contrary, the defendant testified that the mother had told him that she had only named him as the child's father because the man with whom she had been living left her and the defendant was the "closest person to her." Id. at 192, 721 A.2d 738.
Relief was granted to the defendant under R.4:50-1(f) based upon a showing of exceptional circumstances that required the court's action "in order to achieve equity and justice." Id. at 196-197, 721 A.2d 738. In rejecting the Division's argument that existing arrears should nonetheless be collectable, the Appellate Division found that an improperly imposed child support obligation could not be bifurcated between amounts previously owed and those sought prospectively:
To accept the test results for one purpose [extinguishing a future support obligation], and repudiate them for another [the collection of accrued arrears], cannot be fairly rationalized. As another jurisdiction has recently recognized, `denying the county the opportunity to collect child support from a man who it knows is not the child's father does not deny the county any right deserving protection.' Losoya v. Richardson, 584 N.W.2d 425, 429 (Minn.Ct.App.1998).
[Monmouth County Div. of Soc. Servs. ex rel. Hall, supra at 197, 721 A.2d 738.]
In the within matter, D.J.D.'s voluntary execution of the Certificate of Parentage created a legal parent-child relationship with D.D. which allowed her to rely on him both as a father figure and as a source of financial support. It was only when D.J.D. produced the proofs necessary to be relieved of his obligations under N.J.S.A. 9:17-41, and C.O.'s paternity was confirmed, that D.J.D.'s support obligation properly shifted to C.O. Cumberland County Bd. v. W.J.P., supra at 369, 755 A.2d 1171.
Notwithstanding the fact that he and L.R.R. had never married, and were not living together at the time that D.D. was conceived, D.J.D. did not avail himself to genetic testing either before signing the Certificate of Parentage or before a child support obligation was imposed upon him by the court. Rather, he simply assumed that he was D.D.'s father based upon his relationship with L.R.R. and the fact that she did not tell him otherwise. He did so at his peril. When a man fails to demand genetic testing and voluntarily accepts the obligations and benefits of parenthood by signing a Certificate of Parentage, it is he, and not the child or the taxpayers who provide funding for public assistance, who should bear the financial consequences if it is later determined that he is not the biological father. Accordingly, the court finds that D.J.D. is responsible for arrears that accrued prior to June 15, 2000, and is not entitled to reimbursement from the Division for child support payments made prior to that date.
Beyond the parties' financial interest in determining the paternity of a child, there is the overriding interest of the child to be *1140 secure in her parental relationships and to know, without question and at the earliest possible moment, the identity of her biological father. While the court is mindful of the impact that the requirement of early genetic testing may have on the relationships of the adults involved, it pales in comparison to the emotional and financial hardships that can be visited upon a child who innocently bonds with a man she believes to be her father and only later finds out that no such biological relationship exists.
D.J.D. is not without recourse in this matter. N.J.S.A. 9:17-55 provides that, once paternity has been established, reimbursement may be sought against the father by the mother, child or any other person who has furnished or may furnish the reasonable expenses of pregnancy, postpartum disability, education, support, medical expenses, or burial to the extent that the person has furnished those expenses (emphasis supplied). Reimbursement has long been recognized as an equitable means to advance the interests of fundamental fairness and to avoid unjust enrichment where one party has defaulted on an obligation and another has been caused to make payments on his or her behalf. See Rosen v. New Jersey Division of Developmental Disabilities, 256 N.J.Super. 629, 644, 607 A.2d 1030 (App.Div. 1992); Perreira v. Rediger, 330 N.J.Super. 455, 464, 750 A.2d 126 (App.Div.2000). Just as a step-parent who pays pendente lite support for his step-child may seek reimbursement from the natural parent,[4] this court finds that one who innocently undertakes a child support obligation may seek reimbursement from the biological father, subject always to considerations of equity, due process and justice.
NOTES
[1] This figure was based upon imputed minimum wage income to D.J.D. and reflected the amount owed for two children under the Child Support Guidelines. At oral argument, the Division stipulated that the base amount for one child under the Guidelines was $42 and the additional amount owed for a second child was $19.
[2] D.J.D. and C.O. did not submit briefs and did not participate in oral argument.
[3] See Ross v. Ross, 126 N.J.Super. 394, 400, 314 A.2d 623 (J. & D.R.Ct.1973), aff'd, 135 N.J.Super. 35, 342 A.2d 566 (App.Div.1975) (stepfather who voluntarily allowed his name to be placed on child's birth certificate, even though he knew the child was not his, and allowed the child to believe that he was his natural father, was equitably estopped from later withholding support on the basis that he was not the child's biological parent); M.H.B. v. H.T.B., 100 N.J. 567, 576, 498 A.2d 775 (1985) (step-father who continued to maintain a bond with the child and entered a support agreement even after he learned that he was not the child's biological father was equitably estopped from denying support obligation because "his actions amounted to `a voluntary and knowing course of conduct with respect to [the child], which constituted in its purpose and effect an affirmative representation that he was her natural father'"). Also see Camden County Board of Social Services v. Yocavitch, 251 N.J.Super. 24, 33, 596 A.2d 769 (Ch.Div.1991) (equitable estoppel not available to a biological father who seeks to avoid his support obligation to his child simply because a step-parent has assumed that obligation in his absence).
[4] Miller v. Miller, supra at 170, 478 A.2d 351.