795 A.2d 331 (2002)
350 N.J. Super. 389
F.B. and Monmouth County Division of Social Services, Plaintiffs-Respondents,
v.
A.L.G., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 11, 2002.
Decided April 26, 2002.
*332 Spevack & Cannan, attorneys for appellant (S.K. Gupta, on the brief).
Thomas H. Klein, Eatontown, attorney for respondent Monmouth County Division of Social Services (Mary C. Sullivan, on the brief).
*333 F.B., respondent pro se, relying on the brief submitted by Monmouth County Division of Social Services.
Before Judges KESTIN, STEINBERG and ALLEY.
The opinion of the court was delivered by KESTIN, J.A.D.
The central issues in this appeal implicate the standards for determining when the defendant in a paternity and support action is entitled to a grant of his request for genetic testing as to one child, and the circumstances in which support may be ordered in respect of a second child notwithstanding that the defendant is not the biological father of that child. In the instant matter, the trial court denied defendant's application for genetic testing regarding his alleged paternity of the younger of plaintiff F.B.'s two children; and he was required to continue supporting the older child whose paternity he had previously acknowledged, notwithstanding that it was conceded in this proceeding that he is not the father of that child.
Defendant appeals from a June 22, 2000 trial court order which resolved the paternity and support-obligation issues and established the amount of support due for the two children. After several days of trial, the trial court judge articulated his reasons for the various provisions of the order in an extensive oral opinion delivered on June 13 and 16, 2000.
The record before us discloses that the 1995 complaint for a determination of paternity and support as to the older child was not properly verified pursuant to R. 5:14-1; and this defect carries over to the subsequent amendment of the complaint to include the younger child. We noted in Monmouth County Div. of Soc. Servs. v. P.A.Q., 317 N.J.Super. 187, 721 A.2d 738 (App.Div.1998), that a complaint which alleges no facts pertaining to the paternity issue "on personal knowledge admissible in evidence to which the affiant is competent to testify" is "insufficient to invoke the jurisdiction of the [trial] court." Id. at 194, 721 A.2d 738; see Lippmann v. Hydro-Space Tech., Inc., 77 N.J.Super. 497, 503-04, 187 A.2d 31 (App. Div.1962); see also State v. One (1971) Datsun, 189 N.J.Super. 209, 211, 459 A.2d 1183 (App.Div.1983). The complaint in this matter was filed by the very same social services agency involved in P.A.Q., the Monmouth County Division of Social Services (MCDSS). The "verification" in each instance was by an employee of the agency merely certifying that the skeletal facts alleged in the complaint reflected information contained in the agency's records "maintained in the normal course of business." Such a "verification" does not meet the requirements of the rules as elucidated by us in P.A.Q., supra. A mere formality does not satisfy the need which genuine "verification" is designed to address. There was no basis for the trial judge's ruling that this matter is distinguishable from P.A.Q. in respect of the defective verification.
Nevertheless, because all claims were fully determined by the trial court after full participation by all parties including the sworn testimony of those with first-person knowledge, because all issues have been exhaustively briefed by both sides on appeal, and because those issues bear upon questions commonly encountered, we exercise our discretion to consider the complaint as having been properly amended and to address the issues rather than reversing and ordering dismissal of the complaint. In the future, however, the trial courts should decline to assert jurisdiction over complaints alleging paternity *334 that are not verified in the sense intended by the rules, i.e., those that do not contain verified allegations concerning the defendant's parentage "made on personal knowledge admissible in evidence to which the affiant is competent to testify." P.A.Q., supra, 317 N.J.Super. at 194, 721 A.2d 738.
The trial court order which we are called upon to review denied defendant's October 27, 1999 motion for genetic testing of F.B.'s younger son, born on February 26, 1996. The order also declared as moot defendant's May 4, 1999 motion for genetic testing of the older child, born on August 23, 1990. As to the older child, the order recited that F.B. had conceded defendant was not the biological father of that child. The order noted that the concession, accepted as accurate by plaintiff MCDSS, was binding on the agency, which had been subrogated to F.B.'s rights to seek support by reason of having provided public assistance to her for the benefit of the children.
For reasons expressed in his oral opinion, the trial judge also denied defendant's motion for vacation of a December 11, 1995 order and subsequent orders based thereon regarding the support of the older child. Further, he granted plaintiffs' claim for support of the younger child. The instant order went on to establish the amounts of past and future support due for the two children as well as the payment of arrearages on account of the 1995 support order and the subsequent orders based thereon.
Defendant's appeal encompasses those provisions of the order which bear upon paternity. Except to challenge his payment obligations as ordered, he raises no issue concerning the support levels which the trial court set. Defendant argues that the trial court erred in denying his motion to vacate the prior orders dealing with his support obligations for the older child; that in doing so the trial court misapplied the standards of R. 4:50-1(f); that the trial court should have granted his motion for an accounting and reimbursement of all support paid previously on behalf of that child; and that the trial court erred both in denying his motion for genetic testing to determine whether he is the younger child's biological father and in ordering him to make support payments in respect of that child without a proper determination of paternity.
F.B. has joined in MCDSS's response to defendant's arguments on appeal. In addition to its responsive arguments, MCDSS also argues affirmatively on appeal that defendant "should be ordered pursuant to N.J.S.A. 9:17-54 to pay reasonable attorney's fees and costs to MCDSS." Apart from other considerations, MCDSS may not raise this independent issue because it has not filed a cross-appeal. See Pressler, Current N.J. Court Rules, comment on R. 2:3-4 (2002). The exception to this general bar for "extraordinary circumstances", see ibid., cannot apply where the issue could have been raised before the trial court but was not presented. See ibid.; see also Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973).
The trial court's factual findings are well supported by substantial evidence in the record. We are, therefore, bound by them on appeal. See Cesare v. Cesare, 154 N.J. 394, 411-13, 713 A.2d 390 (1998). Defendant, however, does not challenge the basic findings of fact; he impugns the conclusions of law based thereon.
F.B. and defendant have never lived together. They first met in January 1990, while both were college students. Their sexual relationship began in February 1990. The first child was born six months later. By size and weight, the child was a *335 full-term baby, but defendant accepted the child as his. There was conflicting testimony whether F.B., during her pregnancy or at the time of the child's birth, had told defendant he was not the father. The trial judge allowed that F.B. had not informed defendant that the child was the product of her earlier relationship with another man. Nevertheless, the trial judge rejected as entirely lacking credibility defendant's assertions that because he had been misled by F.B., both before and after the child's birth, to believe the child was his, he had no basis for denying paternity at the time of birth. In this latter connection, the judge stressed the baby's size and weight at birth as among the facts belying defendant's contentions. By reason of plaintiffs' concession that defendant was not the older child's father, however, the trial judge held the paternity issue as to the older child to be moot.
The trial judge dealt separately with the issue of defendant's right to scientific testing regarding his paternity of the younger child. Applying the best-interests-of-the-child test, see M.F. v. N.H., 252 N.J.Super. 420, 599 A.2d 1297 (App.Div.1991), in the light of the personal history between defendant and that child, and engaging in the balancing process required in such matters, see C.R. v. J.G., 306 N.J.Super. 214, 227-30, 703 A.2d 385 (Ch.Div.1997); see also State v. Volk, 280 N.J.Super. 57, 61, 654 A.2d 500 (App.Div.1995); cf. N.M. v. J.G., 255 N.J.Super. 423, 433-34, 605 A.2d 709 (App.Div.1992), the judge held that defendant was not entitled to an order for paternity testing as to that child.
It was critical in the judge's estimation that, at an earlier stage of the support action, in 1995, defendant had acknowledged his paternity of the older child; and that defendant had acknowledged his paternity of the younger child both shortly after that child's birth and subsequently in the support action. The judge specifically found as fact that, since the births of both children, defendant had held each of them out to be his, both to the children themselves and to others. Applying Miller v. Miller, 97 N.J. 154, 478 A.2d 351 (1984); A.K. v. S.K., 264 N.J.Super. 79, 624 A.2d 36 (App.Div.1993); Savoie v. Savoie, 245 N.J.Super. 1, 583 A.2d 762 (App.Div.1990); Ross v. Ross, 135 N.J.Super. 35, 342 A.2d 566 (App.Div.1975); and A.S. v. B.S., 139 N.J.Super. 366, 354 A.2d 100 (Ch.Div. 1976), aff'd, 150 N.J.Super. 122, 374 A.2d 1259 (App.Div.1977), the trial judge held defendant to be estopped from denying his paternity of both children.
Our analysis begins with the proposition that, although "[a]t common law[] parents had an absolute duty to support their children[,]... [t]here is no statutory requirement in New Jersey imposing a duty of support on third-party non-parents." Cumberland County Bd. of Soc. Servs. v. W.J.P., 333 N.J.Super. 362, 365, 755 A.2d 1171 (App.Div.2000). In W.J.P., we went on to explain:
Nonetheless, a person, other than a child's natural or adoptive parent, may be charged with a parent's duties and responsibilities if he or she stands in loco parentis. Miller v. Miller, 97 N.J. 154, 167, 478 A.2d 351 (1984). "The proper definition of a person in loco parentis to a child is a person who means to put himself [or herself] in the situation of the lawful father [or mother] of the child with reference to the father's [or mother's] office and duty of making provision for the child."
[Id. at 365-66, 755 A.2d 1171 (citations omitted).]
The in loco parentis principle is a venerable concept. As a private law rule, it developed in the common law for a variety of policy reasons expressly to govern family situations within a marriage in which a *336 child was born and acknowledged by the male head of the family, and treated by him as other children were or would have been treated, with a later discovery that another person was the biological father of the child. See also N.J.S.A. 9:17-43a, a section of the New Jersey Parentage Act, N.J.S.A. 9:17-38 to -59, modelled after the 1973 Uniform Parentage Act, 9B U.L.A. 377-505 (2001). By its own terms, the principle has limited, if any, application to situations currently encountered with unfortunate frequency in which there is no traditional family setting, i.e., no marriage or even continuing cohabitation over time. See Laurence L. Nolan, Legal Strangers and the Duty of Support, 41 Santa Clara L.Rev. 1 (2000) (discussing and evaluating the application of traditional principles in the light of changing societal practices). Aside from endemic problems in applying the concepts undergirding the private law in loco parentis principle, today's realities so often involving eschewal of traditional family settings tend to render anomalous the notions of waiver and estoppel which are part of the rule.
Even in contemporary contexts, the private law in loco parentis principle and concepts flowing therefrom have been applied primarily in situations in which a parent-child relationship has developed in a family setting. The principle has been useful in determining whether to apply waiver or estoppel either to a person functioning as a parent who believed initially he was the father of the child, or to such a person who always knew he was not the biological father but nevertheless assumed a parental role. See, e.g., M.H.B. v. H.T.B., 100 N.J. 567, 498 A.2d 775 (1985); Miller, supra; A.K., supra; N.M., supra. There is no authoritative history in New Jersey of the in loco parentis principle being applied outside of a family-type setting, and there is a paucity of reported cases in other jurisdictions applying the concept that broadly.
Plaintiffs place heavy reliance on the idea that the best interests of the child should control the outcome in all situations in which parentage is an issue. If that notion were to be credited, every support case could result in a judgment establishing a support obligation on the part of the putative father, for the provision of support is always in the best interests of the child; and a designation of parentage, even if only by operation of estoppel or waiver, almost always serves that end as well. See Diane S. Kaplan, Why Truth Is Not a Defense in Paternity Actions, 10 Tex. J. Women & L. 69, 70-72 (2000). Our study of the subject matter leads us to conclude that, while the best interests of the child is the most important criterion, it is not the only consideration in resolving the parentage issue in a support case.
Factually, this matter is a far cry from the post-divorce controversy in A.K. which arose from a thirteen-year marriage involving the birth of three children who, by the time the parentage issues came to us for resolution, were fifteen, thirteen and ten years of age and had "gr[own] up with the belief that both parties were their parents." A.K., supra, 264 N.J.Super. at 84, 624 A.2d 36. In the divorce case five years earlier, followed by further proceedings a year-and-a-half later, the parties had litigated and resolved custody issues, all in the light of substantial questions over the defendant's capability to have fathered the children. We held in view of all the circumstances that the defendant was equitably estopped from contesting his support obligations for the children. See id. at 89-90, 624 A.2d 36.
In N.M. v. J.G., supra, 255 N.J.Super. at 432-34, 605 A.2d 709, we noted the statutory presumption in the Parentage Act, N.J.S.A. 9:17-43a, which is also *337 primarily predicated on the family-like factual context which undergirds the common-law rule, and we referred to a further provision allowing for the presumption to be rebutted by clear and convincing evidence, N.J.S.A. 9:17-43b. Even then, a decade ago, before DNA testing was as common and highly relied upon as it is today, we held in a dispute over which of two men was the father of a child that, although HLA blood testing could not be ordered of an individual resistant to it without an adequate prima facie basis, it was a better determinant of parentage than was automatic application of the statutory presumption. See N.M., supra, 255 N.J.Super. at 433, 605 A.2d 709; see also Kaplan, supra, 10 Tex. J. Women & L. at 73-81 (discussing three state law models for determining paternity as a matter of law).
Given our observation in W.J.P., supra, 333 N.J.Super. at 365, 755 A.2d 1171, regarding the absence of any statutory rule in New Jersey imposing a duty of support on non-parents, we accept as valid the approach of the trial court in Monmouth County Div. of Soc. Servs. v. D.J.D., 344 N.J.Super. 74, 779 A.2d 1135 (Ch.Div. 2001). That case, also involving the MCDSS as a plaintiff, has factual parallels to the instant matter. Judge Perri observed therein:
It is firmly established that the natural or biological parent of a child is always to be considered the primary recourse for child support "because society and its current laws assume that the natural parent will support his or her child." Miller v. Miller, 97 N.J. 154, 169, 478 A.2d 351 (1984). An exception may exist when a person voluntarily establishes an in loco parentis relationship with a child. Cumberland County Bd. v. W.J.P. 333 N.J.Super. 362, 365-366, 755 A.2d 1171 (App.Div.2000). In order for this duty of support to attach, however, it is not enough that the person merely accepts the obligation of support. Camden County Board of Social Services v. Yocavitch, [251 N.J.Super. 24, 31-32, 596 A.2d 769 (Ch.Div.1991) ]. There must also be some "positive action" by the obligor that interferes with the natural parent's support obligation, Miller v. Miller, supra, [97 N.J.] at 170, [478 A.2d 351] or "a voluntary and knowing course of conduct" with respect to the child which constitutes an affirmative representation of parenthood. M.H.B. v. H.T.B., [100 N.J. 567, 576, 498 A.2d 775 (1985) ].
[Id. at 79-80, 779 A.2d 1135.]
The central inquiry in all paternity and support cases, therefore, is whether the putative father is actually the biological parent of the child. If he is, a support obligation attaches except possibly in extraordinary circumstances, such as where another person has supplanted him as a functioning parent and has actively impaired the biological parent's relationship with the child. See Miller, supra, 97 N.J. at 162-67, 478 A.2d 351. Concomitantly, if the putative father is not the biological parent, he has no obligation of support unless his own actions, considered in the broad context of his relationship with the child, dictate that, as an equitable consideration, he ought to be estopped from denying his paternity.
Here, it has been conceded that defendant is not the older child's biological father. We hold, as a matter of law, that in the absence of a family-like structure, or extraordinary circumstances, the in loco parentis principle and its waiver or estoppel effects may not be used as a surrogate for biological parenthood. The facts found by the trial court regarding this defendant's relationship with the older child, in a context where there has been no familylike structure or no extraordinary circumstance, *338 are insufficient as a matter of law as grounds for invoking the in loco parentis principle and applying the waiver or estoppel it betokens.
The question of defendant's parentage of the younger child remains to be determined. We are mindful of the general rule that scientific testing for paternity will be ordered only where the putative father makes a sufficient prima facie showing that there is reason to doubt the veracity of the principal allegation, and other factors are appropriately considered in the balance. See C.R., supra, 306 N.J.Super. at 227-30, 703 A.2d 385; see also Volk, supra, 280 N.J.Super. at 61, 654 A.2d 500; cf. N.M., supra, 255 N.J.Super. at 433-34, 605 A.2d 709.
We regard the trial court's denial of DNA testing as to the younger child to have given insufficient weight to the facts surrounding F.B.'s efforts over the years to deceive defendant as to his paternity of the older child, or, at the very least, in failing to disabuse him of his own gullibility-or ignorance-based misperceptions. Her deceptions and lack of candor place seriously in question the veracity of her assertion regarding defendant's paternity of the younger child. Her conduct is, alone, reason enough to require that the truth of her allegation be tested by DNA analysis.
In respect of defendant's responsibility for past payments made on account of either child's support, we essentially affirm the result the trial court reached in denying his application for a refund. Even though defendant was held to be responsible for the support of both children, the trial judge observed that we had held in P.A.Q. that once it is determined a putative father has no responsibility for support, such arrearage obligations as have accumulated from prior orders are to be vacated. We are mindful, also, of another trial court's reasoning on the question in D.J.D., supra, 344 N.J.Super. at 81-82, 779 A.2d 1135:
Notwithstanding the fact that he and L.R.R. had never married, and were not living together at the time that D.D. was conceived, D.J.D. did not avail himself to genetic testing either before signing the Certificate of Parentage or before a child support obligation was imposed upon him by the court. Rather, he simply assumed that he was D.D.'s father based upon his relationship with L.R.R. and the fact that she did not tell him otherwise. He did so at his peril. When a man fails to demand genetic testing and voluntarily accepts the obligations and benefits of parenthood by signing a Certificate of Parentage, it is he, and not the child or the taxpayers who provide funding for public assistance, who should bear the financial consequences if it is later determined that he is not the biological father. Accordingly, the court finds that D.J.D. is responsible for arrears that accrued prior to June 15, 2000, and is not entitled to reimbursement from the Division for child support payments made prior to that date.
* * *
D.J.D. is not without recourse in this matter. N.J.S.A. 9:17-55 provides that, once paternity has been established, reimbursement may be sought against the father by the mother, child or any other person who has furnished or may furnish the reasonable expenses of pregnancy, postpartum disability, education, support, medical expenses, or burial to the extent that the person has furnished those expenses (emphasis supplied). Reimbursement has long been recognized as an equitable means to advance *339 the interests of fundamental fairness and to avoid unjust enrichment where one party has defaulted on an obligation and another has been caused to make payments on his or her behalf. See Rosen v. New Jersey Division of Developmental Disabilities, 256 N.J.Super. 629, 644, 607 A.2d 1030 (App.Div.1992); Perreira v. Rediger 330 N.J.Super. 455, 464, 750 A.2d 126 (App.Div.2000). Just as a step-parent who pays pendente lite support for his step-child may seek reimbursement from the natural parent, [Miller, supra, 97 N.J. at 170, 478 A.2d 351,] this court finds that one who innocently undertakes a child support obligation may seek reimbursement from the biological father, subject always to considerations of equity, due process and justice.
To an extent, the foregoing determination in D.J.D. is at variance with the conclusion we reached in P.A.Q. that no basis exists in law to impose any obligation on the defendant in a case such as this to pay accumulated arrearages. P.A.Q., supra, 317 N.J.Super. at 196-98, 721 A.2d 738. We did not there address the issue of reimbursement for past payments actually made, however. Now, balancing the equities, and on the strength of the reasoning in D.J.D., we hold specifically that while defendant's responsibility for arrearages is to be vacated as required by P.A.Q., he is not entitled to any reimbursement for payments he made.
In adjudicating the remand of this matter, the trial court shall refine its order so that, depending also on the outcome of the DNA testing to be accomplished, full effect is given to the principles of P.A.Q. and D.J.D. regarding defendant's differing responsibilities for past child support actually paid as distinguished from arrearages due.
Affirmed in part; reversed in part; remanded.