Merrimack
No. 2003-106

IN THE MATTER OF GARY F. HALLER AND DAWN MILLS

Argued: November 6, 2003
Opinion Issued: December 30, 2003

*Sulloway & Hollis, P.L.L.C.,* of Concord (*Timothy A. Gudas* on the brief and orally), for the petitioner.

*Peter W. Heed,* attorney general (*Karen A. Schlitzer,* attorney, on the brief and orally), for the State.

*Wiggin & Nourie, P.A.,* of Manchester (*Heather E. Krans* on the brief and orally), for the respondent.

BROCK, C.J. The petitioner, Gary F. Haller, appeals an order of the Superior Court (*McGuire,* J.) denying his request for a refund of child support payments from the New Hampshire Division of Child Support Services (division). We affirm.

This case arises in a unique and complex posture, and, consequently, we discuss only the salient facts. On June 25, 1996, the respondent, Dawn Mills, gave birth to a daughter. During Mills' pregnancy, Haller executed an affidavit in Louisiana stating that he was the father of Mills' child. Following the child's birth, Mills listed Haller as the father on the child's birth certificate and also signed a sworn affidavit of paternity identifying him as the father.

Although Haller was incarcerated in New Hampshire in 1997, Mills brought the child to visit him in prison. In February 1998, however, she stopped the visits, and Haller subsequently petitioned for visitation. The division intervened, arguing that because it provided public assistance to Mills for the benefit of the child, Haller owed the division the amount of assistance paid to Mills. The Superior Court (*Manias,* J.) ruled that Haller was the child's father, ordered visitation in his favor, and directed him to begin paying child support through the division.

When Mills failed to comply sufficiently with the court's visitation order, Haller filed a motion for contempt. Mills then requested that the court order Haller to submit to a paternity test "as there is a great possibility that he will be excluded as the father of the child." The test was ordered, and as suspected by Mills, its results "excluded [Haller] as the biological father of the child." Haller then challenged the paternity test results, and the Superior Court (*McGuire,* J.) suspended visitation, but made no accompanying ruling as to child support payments. Following a hearing, the Superior Court (*Smukler,* J.), in its final decree on paternity and visitation, ruled that "Haller is not the biological father" of the child and that he "shall have no obligation toward the minor child, financial or otherwise."

Following the court's ruling, Haller filed a motion requesting a refund of $750.00 in child support payments he had made to the division prior to the court's decree terminating his obligations toward the child. He argued that because he "was not the father of this minor child, . . . he had no legal obligation with regard to this debt." Moreover, because Haller made

payments directly to the division, it acted "as the middleman in these transactions" and was therefore properly responsible for reimbursing him. The division objected, arguing, among other things, that Haller voluntarily executed an affidavit attesting to paternity, and, consequently, as the child's legal father for six years, he could not renounce the support obligations imposed upon him during that time. The Superior Court (*McGuire*, J.) denied Haller's motion, citing the reasons set forth in the division's objection.

On appeal, Haller contends that the court erred in summarily denying his request for a refund of child support payments. He argues that principles of restitution require that he be reimbursed. Because he "made the child support payments to the State based on a mistaken belief as to the fact of his paternity . . . and this reasonable and honest mistake of fact was induced by misrepresentations by Mills," he asserts that he is entitled to a refund from the division even though its conduct "was devoid of bad faith." We disagree.

We review the court's ruling in this case under our unsustainable exercise of discretion standard. *See In the Matter of Gilmore & Gilmore*, 148 N.H. 111, 112 (2002) (review of child support rulings); *see also Massicotte v. Matuzas*, 143 N.H. 711, 712 (1999) (review of equitable orders); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

█ At the outset, we note that the establishment of paternity is "an essential prerequisite to imposing the obligation for child support." *Watts v. Watts*, 115 N.H. 186, 188 (1975); *see also Opinion of the Justices*, 131 N.H. 573, 576 (1989) ("To enforce the father's obligation for a child born out of wedlock, however, paternity must first be determined."). Once paternity has been established, the father is liable for the necessary support of the child. *In the Matter of State ex rel. Reitenour & Montgomery*, 148 N.H. 358, 360 (2002); *see also* RSA 168-A:1 (2002); 3 C. DOUGLAS, NEW HAMPSHIRE PRACTICE, FAMILY LAW § 7.07, at 210 (3d ed. 2002).

In the instant case, Haller's paternity was voluntarily and legally established. In denying his request for a refund, the court specifically cited the division's arguments, including the claim that "[Haller], of his own free will, executed a properly witnessed affidavit of paternity of the child." *See* RSA 168-A:2, I(b) (2002) (stating that affidavit of paternity has "the legal effect of establishing paternity without requiring further action"). This claim is not disputed on appeal.

Paternity having been established, a child support obligation was properly imposed upon Haller, requiring him to make payments to the

division in accordance with the court's order. *See Reitenour & Montgomery,* 148 N.H. at 361. That obligation remains in effect until it is judicially modified. *See In the Matter of Feddersen & Cannon,* 149 N.H. 194, 200 (2003). Because Haller was legally required to make payments to the division, nothing now entitles him to a refund of those payments. Consequently, we cannot conclude that the trial court engaged in an unsustainable exercise of discretion in denying Haller's request for a refund.

Although Haller asks us to apply the principles of restitution to justify reimbursement in this case, we decline to do so. Restitution is an equitable remedy typically applied to contracts implied in law to disgorge the benefit of unjust enrichment. *See* 66 AM. JUR. 2D *Restitution and Implied Contracts* §§ 2, 8, 10 (2001). "[T]o be entitled to restitution, there must not only be unjust enrichment, but also the person sought to be charged must have wrongfully secured a benefit, or passively received one which it would be unconscionable to retain." *Id.* at § 10. Here, however, the division did not wrongfully receive payments, nor was it unjustly enriched; rather, payments were made according to Haller's legally imposed support obligation.

While we decline to employ restitution, we note that Haller is not without recourse. The statute governing child support sets forth an appropriate remedy that may be pursued in this case. It authorizes those who have "furnished the reasonable expenses of pregnancy, confinement, education or necessary support" to seek reimbursement from the father. *See* RSA 168-A:2, III(a)-(b) (2002); *see also Div. of Social Services v. D.J.D.,* 779 A.2d 1135, 1140 (N.J. Super. Ct. Ch. Div. 2001) (holding that although putative father was not to be reimbursed by division, he could seek reimbursement from biological father pursuant to New Jersey statute). Although Haller relies upon this statute to argue that granting his refund will not harm the division as it remains free to pursue the biological father for monies paid, this argument applies equally to Haller. Thus, the availability of this statutory remedy militates against his request for restitution from the division. Additionally, we note, without deciding, that Haller might also have a cause of action against Mills based upon misrepresentations she allegedly made to him.

Haller next argues that denying refunds to those in his position "would encourage putative unwed fathers to challenge their paternity in every situation and to refrain from fulfilling parental obligations of support in the absence of DNA testing," thereby harming the parent-child

relationship and burdening the judicial system. While Haller's concerns may or may not be legitimate ones for the legislature to consider, denying reimbursement is consistent with well-established child support policy.

"Requiring parental support of children is deeply embedded in the reasonable policy that the financial burden should rest on the responsible individuals rather than on society at large insofar as possible." *Watts*, 115 N.H. at 188 (citations omitted). Having voluntarily assumed responsibility for the child's paternity, Haller cannot now disaffirm that parental responsibility, *see id.* at 189, nor seek to compel the division to shoulder his burden. *See Div. of Social Services*, 779 A.2d at 1139 ("When a man fails to demand genetic testing and voluntarily accepts the obligations . . . of parenthood by signing a Certificate of Parentage, it is he, and not the child or the taxpayers . . . who should bear the financial consequences if it is later determined that he is not the biological father."). If paternity is to be taken seriously, legal ramifications must result from its establishment. To hold otherwise would create a perverse incentive structure in which, as the division asserts, "there would be no incentive for the mother or a putative father to treat the establishment of paternity seriously because the parties could later contest paternity without consequence—the mother could keep any child support paid, and the putative father could obtain a reimbursement from the State." Accordingly, we affirm.

*Affirmed.*

BRODERICK, NADEAU, DALIANIS and DUGGAN, JJ., concurred.