**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1852-15T1

PAUL BERGER, Derivatively on
Behalf of MERCK & CO., INC.,

    Plaintiff-Appellant,

v.

KENNETH C. FRAZIER, LESLIE A.
BRUN, THOMS R. CECH, THOMAS H.
GLOCER, WILLIAM B. HARRISON, JR.,
C. ROBERT KIDDER, ROCHELLE B.
LAZARUS, CARLOS E. REPRESAS,
PATRICIA F. RUSSO, CRAIG B.
THOMPSON, WENDELL P. WEEKS, PETER
C. WENDELL, ROBERT M. DAVIS, and
PETER N. KELLOGG,

    Defendants-Respondents,

and

MERCK & CO., INC.,

    Nominal Defendant-Nominal
    Respondent.

_____

        Argued October 18, 2017 — Decided July 13, 2018

        Before Judges Fuentes, Koblitz, and Suter.

        On appeal from Superior Court of New Jersey,
        Law Division, Union County, Docket No. L-1379-
        15.

John F. Keating, Jr. (The Brualdi Law Firm, PC) argued the cause for appellant (Steven P. Lombardi, attorney; Richard B. Brualdi, Steven P. Lombardi, and John F. Keating, Jr., on the brief).

Mark A. Kirsch (Gibson, Dunn & Crutcher, LLP) of the New York bar, admitted pro hac vice, argued the cause for respondents (McCarter & English, LLP, and Mark A. Kirsch, attorneys; Mark A. Kirsch, Laura K. O'Boyle and Peter M. Wade (Gibson, Dunn & Crutcher, LLP) of the New York bar, admitted pro hac vice, Samuel G. Liversidge (Gibson, Dunn & Crutcher, LLP) of the California bar, admitted pro hac vice, and Mary Gabriel, on the brief).

PER CURIAM

Plaintiff Paul Berger appeals from a December 4, 2015 order that dismissed his shareholder derivative lawsuit filed against the individual members of Merck & Company's (Merck's) Board of Directors (Board) and three members of Merck's management (collectively, defendants).[1] The complaint alleged that

---

[1] Defendants include: Kenneth C. Frazier, Merck's President and Chief Executive officer since 2011; Robert M. Davis, Merck's Executive Vice President and Chief Financial Officer (CFO) since 2014; Peter N. Kellogg, Merck's Executive Vice President and Chief Financial Officer from 2007 to April 2014; Leslie A. Brun, a member of the Board since 2008; Thoms R. Cech, a member of the Board since 2009; Thomas H. Glocer, a member of the Board since 2007; William B. Harrison, Jr., a member of the Board since 1999; C. Robert Kidder, a member of the Board since 2005; Rochelle B. Lazarus, a member of the Board since 2004; Carlos E. Represas, a member of the Board since 2009; Patricia F. Russo, a member of the Board since 1995; Craig B. Thompson, a member of the Board since 2008; Wendell P. Weeks, a member of the Board since 2004; and Peter C. Wendell, a member of the Board since 2003.

A-1852-15T1

defendants caused Merck to fail to disclose its tax liability on indefinitely reinvested overseas earnings, otherwise known as the Repatriation Tax (Tax), when it filed its 2013 Form 10-K with the Securities and Exchange Commission (SEC). We affirm dismissal of the complaint under Rule 4:6-2(e), for failure to state a claim upon which relief can be granted.

## I.

Merck is a Fortune 500 company headquartered in New Jersey. Its common stock is traded on the New York Stock Exchange. It is a "global health care company." In 2013, its revenue was approximately $43.9 billon; it had $57.1 billion of earnings from its subsidiaries outside the United States. Plaintiff is a stockholder of Merck.

The Financial Accounting Standards Board (FASB)[2] has developed various accounting standards. Standard 740-30-50-2 requires disclosure by companies of "[t]he amount of the unrecognized deferred tax liability for temporary differences related to investments in foreign subsidiaries and foreign corporate joint ventures that are essentially permanent in

---

[2] FASB "establishes financial accounting and reporting standards for public and private companies and not-for-profit organizations that follow Generally Accepted Accounting Principles." About Us, FASB, https://www.fasb.org/jsp/FASB/Page/LandingPage&cid=1175805 317407.

duration if determination of that liability is practicable or a statement that determination is not practicable."

Merck's Form 10-K for year end 2013, filed on February 27, 2014, provided that,

> [a]t December 31, 2013, foreign earnings of $57.1 billion have been retained indefinitely by subsidiary companies for reinvestment; therefore, no provision has been made for income taxes that would be payable upon the distribution of such earnings and it would not be practicable to determine the amount of the related unrecognized deferred income tax liability.
>
> [Emphasis added.]

Plaintiff contends in his complaint that calculation of the Tax is routine, requiring only that "current tax laws and rates" be applied to "historical permanently reinvested earnings." He asserts that Merck's Form 10-K was misleading without the Tax information.

On October 28, 2014, plaintiff demanded that the Board file a lawsuit against Merck's current and past directors for their failure to comply with Standard 740-30-50-2 when reporting the Tax. Plaintiff asserted that this failure breached their fiduciary duties to shareholders.

The Board hired the law firm of Forman & Shapiro, LLP (F&S) to conduct an investigation of plaintiff's claims and to report its findings to the Board. F&S retained an accounting expert,

interviewed partners at PricewaterhouseCoopers, who were the accountants for Merck, and spoke with certain current and former Merck employees. It reviewed records from Merck's Audit Committee and communications between the Board and the SEC.

F&S reported its findings at the February 2, 2015 Board meeting, advising that calculation of the deferred tax liability was "not practicable" and that it was "reasonable" for Merck not to provide this Tax in its Form 10-K. On February 25, 2015, the Board declined to file the lawsuit requested by plaintiff, finding it was "not in the company's best interests."

Plaintiff filed this shareholder derivative lawsuit on April 7, 2015. The complaint alleged defendants breached their fiduciary duty to Merck by causing Merck to fail to disclose the Tax in its Form 10-K filed on February 27, 2014 (for the year ending December 31, 2013) with the SEC. It included a single count against defendants for breach of their duties of "due care, loyalty, good faith, and other obligations to Merck." The relief sought included a declaration of the breach, an affirmative injunction requiring defendants to comply with the accounting standard to disclose the Tax, monetary damages and attorney's fees.

The complaint alleged that other large multinational companies, such as Apple, Microsoft and Citigroup, made disclosure of the Tax. "On information and belief," the complaint averred

A-1852-15T1

that Merck periodically made an estimate of the Tax. Plaintiff also said that for three prior years, Merck calculated and reported a "reconciliation between the effective tax rate and the U.S. statutory [tax] rate, which included . . . foreign earnings and unremitted foreign earnings." The complaint alleged that potential changes to the tax laws could tax "accumulated unrepatriated foreign earnings of controlled foreign companies," creating a financial impact for Merck.

Plaintiff complained that Merck's Board did not "investigate or consider the consequences" of violating this FASB standard even though a July 5, 2014 New York Times article had discussed the same issue and specifically referenced Merck. Another shareholder, the Beatrice Corwin Living Irrevocable Trust, requested access to books and records about the same issue. According to plaintiff, the Board's minimal response showed it did not investigate or consider the issue.

In July 2015, defendants filed a motion to dismiss the verified complaint under Rule 4:6-2(e), for failure to state a claim. Defendants argued that plaintiff provided no factual support for its allegation that Merck could make the Tax calculation "practicably." Defendants averred that the complaint did not allege any acts or omissions by the individual directors that breached their fiduciary duties to the company. Plaintiff

did not identify any purported harm to the company.  Defendants also argued that the directors' decision not to institute suit was protected by the modified business judgment rule.

Judge Thomas J. Walsh dismissed plaintiff's complaint under Rule 4:6-2(e) for failure to state a claim for breach of fiduciary duty on December 4, 2015, in an oral opinion.  Plaintiff's complaint did not allege that defendants breached any "law, regulation or other similar authority" by reporting that Merck's deferred tax liability was not practicable to calculate. Plaintiff did not articulate any facts to support his claims.  Plaintiff did not say how defendants breached any fiduciary duty or that Merck's practices were "not customary in the industry."  Merck's certificate of incorporation "parallel[ed]" N.J.S.A. 14:2-7(3) and limited the liability of a director or officer.  The court found the complaint made "no allegation that the Board knew of a duty to act in regard to disclosure and consciously failed to do so; nor [did] plaintiff's [c]omplaint assert any allegations regarding the Board's oversight of Merck's accounting practices."  There was no obligation by the Board to react to the New York Times newspaper article.  The trial court did not address defendants' modified business judgment rule defense or their contention that plaintiff did not suffer damages.

On appeal, plaintiff claims the trial court erred because it was practicable for the company to calculate and disclose the Tax. Plaintiff argues that Rule 4:6-2(e) was not properly applied. Had it been, the court would have accepted as true all the allegations he made, including that the Tax could be calculated. Plaintiff alleged the Board members breached their duty to "keep informed, to read and understand Merck's financial statements, including its tax disclosures," by not considering the tax implications of the Tax.

Also, the complaint should not have been dismissed based on the exculpatory provision in Merck's certificate of incorporation. This was extrinsic to the complaint. It should not have been enforced at the pleading stage, before discovery. It was improper to deny injunctive relief because the exculpatory clause did not address it.

Plaintiff claims that the modified business judgment rule cannot be used as an alternate basis to affirm the trial court because the trial court did not consider it. Finally, plaintiff argues that Robert Davis, Merck's current chief financial officer (CFO), is a necessary party to this litigation to enforce injunctive relief.

We conclude that plaintiff's arguments lack merit and we affirm the dismissal of this litigation.

A-1852-15T1

We review de novo the challenged order that dismissed plaintiffs' complaint for failure to state a cause of action, applying the same legal standard as the trial court. Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010). A motion for failure to state a claim must be denied if, giving plaintiffs the benefit of all their factual allegations and all favorable inferences, a cause of action has been alleged in the complaint. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). Conclusory allegations do not provide an adequate basis to deny a motion to dismiss under Rule 4:6-2. Id. at 768.

We agree with the trial court that the complaint was properly dismissed under Rule 4:6-2(e). There is no dispute that FASB standard 740-30-50-2 allows a company to report that it is not practicable to estimate the Tax. Financial Accounting Standard (FAS) 109 explains that a determination or calculation may be impracticable where "the cost to develop that information is excessive[.]" FAS No. 107, incorporated into a different section of the ASC, indicates that "practicable" means, "that an estimate . . . can be made without incurring excessive costs."[3]

---

[3] See Statement of Financial Accounting Standards No. 107, Accounting for Income Taxes, 7 (Dec. 1991), http://www.fasb.org/jsp/FASB/Document_C/DocumentPage?cid12182201 23701&acceptedDisclaimer=true.

A-1852-15T1

Practicability, therefore, is a "dynamic concept," meaning what is practicable for one entity might not be for another and what is not practicable in one year might be practicable in another.

We reject plaintiff's contention that we are required to accept as true his allegation that Merck can "practicably" estimate the Tax. That is a conclusion that he has not supported factually. Under Rule 4:6-2(e), we are required to accept as true facts that are alleged, but not conclusory allegations. Scheidt v. DRS Techs., Inc., 424 N.J. Super 188, 193 (App. Div. 2012). "[P]leadings reciting mere conclusions without facts and reliance on subsequent discovery do not justify a lawsuit." Glass v. Suburban Restoration Co., 317 N.J. Super. 574, 582 (App. Div. 1998); see Lederman v. Prudential Life Ins. Co. of Am., 385 N.J. Super. 324, 349 (App. Div. 2006).

Plaintiff makes three arguments to support this conclusion, none of which are persuasive. Plaintiff contends on "information and belief" that Merck actually estimated the Tax. He provided no evidence or facts to support this. This claim is meaningless because it was based on information and belief, not on personal knowledge even though the complaint was verified. See Monmouth Cty. Social Serv. v. P.A.Q., 317 N.J. Super. 187, 193-94 (App. Div. 1998) (providing that a complaint that is made without

personal knowledge, it is a nullity and insufficient to invoke the court's jurisdiction); see also R. 1:4-7.

Next plaintiff says that Merck was required to make a reconciliation between the effective tax rate and the U.S. statutory tax rate and did so in 2011, 2012, and 2013. Defendants acknowledge that they were required to make a reconciliation between the effective tax rate and U.S. statutory tax rate, but that the calculation simply applied a 35% tax rate to foreign earnings. What is important here is that plaintiff did not explain how this reconciliation shows that Merck can practicably estimate the Tax at issue. This then is another bare conclusion, not supported by facts.

Plaintiff contends that other multinational companies, such as Apple and Microsoft, disclose the amount of the Tax. However, that does not mean that Merck can do the same or that its corporate structure is similar. These are entirely different corporations with separate overseas business holdings. Equating one company's capabilities with another is speculative. Therefore, we agree with the trial court that the complaint was properly dismissed under Rule 4:6-2(e) because it relied on a newspaper article and conclusory statements without any supporting facts. Without factual support, we cannot "accept as true" plaintiff's conclusion that Merck can calculate the Tax "practicably."

The breach of fiduciary duty claim also was properly dismissed by the trial court. The complaint alleged a single count for breach of fiduciary duty by Merck's directors and officers. Plaintiff argued that Merck's shareholders "have a right to expect that directors will exercise reasonable supervision and control over the policies and practices of a corporation," citing <u>Francis v. United Jersey Bank</u>, 87 N.J. 15, 36 (1981). He claims that defendants had a "duty to look" which included "reading and understanding financial statements, and making reasonable attempts at detection and prevention of . . . illegal conduct." <u>Id.</u> at 31, 39.

Whether or not <u>Francis</u> sets forth the applicable standard, the complaint did not allege facts sufficient to meet the standard. The complaint did not cite a law or regulation violated by Merck's 2013 Form 10-K. It did not identify any inadequacies with Merck's internal controls or its financial reporting process. It did not say what accounting standards were violated. There was no obligation by the Board to act based on a newspaper article that mentioned the company. There were no factual allegations made against individual Board members.

We discern no error by the trial court in dismissing the complaint in the alternative based on the exculpation clause in

Merck's certificate of incorporation for directors and officers. It provided that

> all current and former directors and officers of the Corporation shall not be personally liable to the Corporation or its stockholders for damages for breach of duty owed to the Corporation or its stockholders, except that the provisions . . . shall not relieve a director or officer from liability for any breach of duty based upon an act or omission (a) in breach of such person's duty of loyalty to the Corporation or its stockholders, (b) not in good faith or involving a knowing violation of law or (c) resulting in receipt by such person of an improper personal benefit.

The certificate of incorporation was referenced by plaintiff in his complaint. The trial court could rely on it in deciding the <u>Rule</u> 4:6-2(e) motion. <u>See</u> <u>Myska v. N.J. Mfrs. Ins. Co.</u>, 440 N.J. Super. 458, 482 (App. Div. 2015) (quoting <u>E. Dickerson & Son, Inc. v. Ernst & Young, LLP</u>, 361 N.J. Super. 362, 365 n.1 (App. Div. 2003) ("a court may consider documents specifically referenced in the complaint 'without converting the motion into one for summary judgment.'"). Plaintiff's complaint did not allege facts showing the individual defendants breached their duty of loyalty, acted in bad faith, knew about any violation of law or benefited from the Form 10-K filing.

We also reject plaintiff's argument that Robert Davis was a necessary party to the litigation. He was not CFO when the 2013

Form 10-K was filed in February 2014.  He is not needed for injunctive relief, given our decision here.

In light of our opinion, we have no need to address any of plaintiff's arguments about the modified business judgment rule.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION